1
2
3
4

Paul E. Jozwiak
404 South Cedar Ave.,
Marshfield, WI 54449
Phone: (520)-818-4976
E-Mail: orion5x5x9@yahoo.com

FILED ✓    LODGED ____
RECEIVED ____    COPY ____

JAN 2 4 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

5

6
7

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Paul E. Jozwiak,

[Claimant/Plaintiff],

VS.

Raytheon Missile Systems;
MetLife Disability;
Beth A. Green;
Dr. Arthur J. Bacon;
Dr. Karen A. Haas;
Dr. John L. Schaller;
Dianne D. Avellar;
Guy C. Slominski;
Joanne Bockmiller;
Mary W. Richardson;
Pat M. Brutscher;
Sean T. Kurysh;
Veronica Thomas,

and

Other Names May Become Available
At A Later Date Due To The Discovery
Process.

[Defendants].

**VERIFIED COMPLAINT**

No. ___CV-20-39-TUC-DCB___

Complaint For Breach Of ERISA
Fiduciary Duty, Breach of ERISA Co-
Fiduciary Duty Under Fraud and/or
Concealment With Retaliatory
Discharge and Prohibited Transactions.

# TABLE OF CONTENT(S):

INTRODUCTION: ................................................................ 2

JURISDICTION: ................................................................ 9

VENUE: ................................................................ 9

THE PARTIE(S): ................................................................ 10

    The Plaintiff(s). ................................................................ 10

    The Defendant(s). ................................................................ 10

TABLE OF AUTHORITIE(S): ................................................................ 13

STATUTE(S): ................................................................ 19

STATEMENT OF PROVEN FACT(S): ................................................................ 20

PROBLEM(S) WITH LETTER(S): ................................................................ 74

ISSUE(S) AND VIOLATION(S): ................................................................ 77

CONCLUSION(S): ................................................................ 83

APPENDIX: ................................................................ 85

    ERISA Plan Document(s). ................................................................ 85

    Relevant Evidence. ................................................................ 86

PRAYER FOR RELIEF: ................................................................ 87

STATEMENT OF VERIFICATION: ................................................................ 89

# INTRODUCTION:

The Question(s) That Arise Are When does An ERISA Plan's Statute Of

Limitations Begin To Run Or Accrue, What Notice Of The Time Limit(s) For

Judicial Review Must ERISA Plans and Administrators Provide To Beneficiaries,

and What Is The Remedy For The Failure and/or Interference In A Claimant's

Protected-Rights Related To Providing These Required Documents and Notices.

Under **ERISA § 502 / 29 U.S. Code § 1132,** The Civil Enforcement For Instances

Of An Administrator and/or Fiduciary Who Engages In Criminal Acts Against A

Claimant, The Code Clearly States;

**(a)** Persons Empowered To Bring A Civil Action;

A Civil Action May Be Brought—

**(1)** By A Participant Or Beneficiary;

**(2)** By The Secretary, Or By A Participant, Beneficiary Or Fiduciary For

Appropriate Relief Under Section **1109** Of This Title;

**(3)** By A Participant, Beneficiary, Or Fiduciary;

**(A)** To Enjoin Any Act Or Practice Which Violates Any Provision Of This

Subchapter Or The Terms Of The Plan; Or

**(B)** To Obtain Other Appropriate Equitable Relief;

**(i)** To Redress Such Violations; Or

**(ii)** To Enforce Any Provisions Of This Subchapter Or The Terms Of The Plan.

For Claims Of A Breach Of Fiduciary Duty Under **§ 502(a)(3),** ERISA Provides A

Limitations Period. Under **ERISA § 413 / 29 U.S Code § 1113,** (Cole v. Travelers

Ins. Co., 208 F. Supp. 2d 248, 258 (D. Conn. 2002)); It Was Found The Plaintiff(s)

Must Bring These Claims Within The Earlier Of <u>Six-Years</u> After The <u>Last-Action</u> That Constituted The Breach, <u>Six-Years</u> After The <u>Actual-Date-Of-Discovery</u> Of The Breach Or <u>Three-Years</u> After The Earliest Date The Plaintiff Had <u>Actual-Knowledge</u> Of The Breach. One Must Also Be Aware That Under **§ 510 / 29 U.S Code § 1140**, One Cannot Discharge, Fine, Nor Interfere With A Claimant's/Plaintiff's Protected-Rights As These Claims Are Also Remedied By **§ 502(a) / 29 U.S Code § 1132(a)**.

As One Will See In, <u>(Larson v. Northrop Corp., 21 F.3d 1164, 1172-73 (D.C. Cir. 1994))</u>; and, <u>(Radiology Ctr., 919 F.2d at 1220)</u>; and <u>(Shaefer v. Ark. Med. Soc'y, 853 F.2d 1487, 1491-92 (8th Cir. 1988))</u>; The Second Circuit Held That This <u>Six-Year</u> Period Is NOT Limited To Cases Of Fraudulent Concealment! Instead, It Reads The Text Literally To Refer To <u>Either Fraud Or Concealment</u> So The <u>Six-Year</u> Statute Of Limitations <u>Should Be Applied</u> To Cases In Which An Administrator Or Fiduciary; **(1)** Breached Its Duty By Making A Knowing Misrepresentation Or Omission Of A Material Fact To Induce An Employee / Beneficiary To Act To Their Detriment; Or, **(2)** Engaged In Acts To Hinder The Discovery Of A Breach Or Violation Of Fiduciary Duty As In, <u>(Caputo v. Pfizer, Inc., 267 F.3d 181, 190 (2d Cir. 2001))</u>.

At This Point A Reasonably Honest and Sane Person Must-Realize That For A Claimant/Plaintiff To **DISCOVER** An Actual Breach Or Violation Of Duty

Involving Fraud and/or Concealment, One Must First Obtain Enough Of The

Necessary Documentation and/or Evidence In The Form Of The <u>Administrative</u>

<u>Record</u>, The <u>Administrative Record's Transaction Report</u>, The <u>Summary Plan</u>

<u>Description (SPD)</u> and <u>All Available Medical Records Or Reports</u>

<u>Which Only **FIRST-OCCURRED** After September 9th, 2014.</u>

The Fact(s) Of The Case Are The Claimant/Plaintiff Was Put On Short-Term

Disability (<u>STD</u>) In **February 10th, 2011**, Then Transitioned Over To Long-Term

Disability (<u>LTD</u>) in **April 22nd, 2011**. This Disability Continued Through

**November 21st, 2012** In Which The Claimant/Plaintiff Had Their <u>Employment and</u>

<u>Disability Benefits</u> Wrongfully TERMINATED and Was First Notified Of This

Adverse Action By Letter In **November 26th, 2012**!

At This Point Raytheon and MetLife Disability Still-Failed To Provide The

Required Plan/Policy To The Claimant/Plaintiff In Direct Violation of **ERISA §**

**104(b) / 29 U.S.C. § 1024(b)**, (<u>Failure To Provide A Plan Summary As Required</u>)!

The Claimant/Plaintiff Had On Numerous Occasions During The **2011** Through

**2013** Time Frame Contacted MetLife and Raytheon By Letter and/or Phone

Requesting This SPD, However It NEVER Arrived Until <u>By E-Mail</u> On

**September 30th, 2013**. This Wrongful Restriction Of Required By Law

Documents With The Continual Failure To Comply To Legal and Binding

Requests For The <u>ENTIRE Administrative Claim Record</u> Left The

5

Claimant/Plaintiff Without The Necessary Resources To Determine What

Evidence Was Detrimental In Their Determination To <u>TERMINATE-BOTH</u> His

Benefits and Employment As Such Action Could Be:

1. Due To Some Unknown Exclusion and/or Requirement Within The Plan/Policy <u>That-WAS</u> Or <u>Was-NOT</u> Met!

2. Some Missing Or Incomplete Documentation and/or Medical Record Needed To Clarify and Perfect The Claim!

3. Some Incorrect Or Misinterpreted Report and/or Medical Diagnosis That Needed To Be Resolved To Perfect The Claim!

4. Some Administrator, Evaluator Or Other <u>NOT</u> Being Capable and/or Qualified To Be Doing The Evaluation Of The Claim!

5. Some Administrator, Fiduciary, Manager and/or Supervisor Engaging In Coercive Interference Of Rightful Benefits and Retaliatory Discharge To Conceal A Company's and/or Manager's Ongoing Misconduct!

<u>What Was **FIRST-DISCOVERED** After September 9th, 2014 As The Cause</u>

For This Wrongful Denial Of The Claim Was That MetLife and Raytheon Had:

a) Failed To Ever Contact Most Of The Claimant's/Plaintiff's Doctors, For The <u>Necessary Medical Records</u> and/or <u>For Doing A Consultation</u> Which Was Needed For A Proper Evaluation Of The Claim!

b) Failed To Enter Into The Administrative Record and/or In A Timely Fashion Those Medical Records That Were Provided To Them By The Claimant/Plaintiff, Some Doctors and Others!

c) Failed To Provide Medical Records Which Were <u>Already-Within-Their-Possession,</u> To Those Who Were Contracted To Perform The Disability and/or Medical Review(s)!

d) Intentionally Provided False and Misleading Information To The

Independent Medical Examiners and Others Where Raytheon and MetLife Claimed There Were NO Medical Records Available For The Evaluation, There Was NO Supporting Evidence Of A Disability Or The Claimant/Plaintiff Was An <u>ALREADY-TERMINATED-EMPLOYEE</u> From The Company As Documented In MetLife's Own Dr. Schumacher's **July 10th, 2012** Report!

**e)** Intentionally Contacted Doctors Treating The Claimant/Plaintiff To <u>Block</u> and/or <u>Cut-Off</u> Medical Tests and Treatment Or In Some Documented Cases, Attempted To Get A Doctor To Change Their Disability Evaluation From One Of <u>DISABLED</u> To That Of <u>NO-DISABILITY</u> As In Dr. Bacon's **April 1st, 2013** and Other Reports!

**f)** Intentionally <u>Restricted-Access</u> To **ALL-PARTS** Of The Administrative Record, (<u>During The Appeal Process</u>) To Well After **July 11th, 2013,** (<u>Per The Actual FEDEX-LABEL</u>) Shown To Be Part Of The Administrative Record and Its Weight Being Only <u>1.0 lb</u> Which Is Actually Less-Than <u>90-Pages</u>!

**g)** Intentionally Withheld The Entire Summary Plan Description (<u>SPD</u>), In Direct Violation Of ERISA Law, To Well After The Appeal Process Had Ended In Which They First Allowed Access To This Plan On **September 30th, 2013**!

**h)** Intentionally Committed <u>Mail-Fraud</u> By Printing Multiple Shipping Labels At MetLife, Then Entering Those Labels Into The Administrative Record As Proof They Sent The Required Documents and Records To The Claimant/Plaintiff! An Investigation Of These Labels Has Proven They Were **NEVER-SCANNED** Into The Postal and/or Package Systems and Therefore Appear To Have **NEVER-BEEN-SENT**!

**i)** Intentionally <u>Falsified Multiple Entries</u> Within The Administrative Record To Develop The Record In Such Fashion To Provide Multiple Fraudulent Means For Blocking and/or Denying The Claim!

**j)** Intentionally <u>Restricted The Appeal Process Review</u> Of The Claimant's/ Plaintiff's Medical Records To Those Dates Beyond **November 19th, 2012,** Stated By A Dr. John L. Schaller For MetLife and As Documented Within The MetLife Administrative Record For

**March 8th, 2013!**

k) Intentional Acts Of Misconduct Committed By The Administrator, Fiduciary, Managers and/or Supervisors At MetLife and/or Raytheon Who Were <u>Engaging In Coercive Interference</u> Of Rightful Benefits and Retaliatory Discharge To Conceal A Company's and/or Manager's Ongoing Illegal Activities!

l) Intentionally Issued **DEFICIENT** and/or **FRADULENT** Denial Letters As Shown By The Administrative Record's Own Confirmation Of The Disabilities Due To Unresolved Infections, Candida Albicans, Multiple Broken Abdominal Sutures and/or Staples, With Body Cavity Infections Causing Serious health Problems For The Plaintiff. As ERISA Law and ERISA Case Ruling Clearly and Undeniably States, "<u>If A Participant Does</u> **NOT** <u>Receive Adequate Notice</u> With **THE-SPECIFIC-REASON(S)**, The Action **CANNOT-BE-BARRED** By The Statute Of Limitations"!

m) Intentionally Issued **DEFICIENT** and/or **FRADULENT** Denial Letters As Shown By The Administrative Record's Own Reports Where It Shows MetLife and/or Raytheon Were Intentionally Withholding Medical Records From The Independent Medical Examiners, Blocked The Review Of Medical Records During The Appeal Process, **Refused To Allow The Proper Fiduciary, Claims and/or Plan Administrator To Review The Claim,** Blocked The Download Of The Medical Director's Summary Response To The Claims Record and <u>Many, Many, MANY More Reasons Much Too Numerous To List Here</u>! Due To **NON-OF-THESE-ACTIONS-EVER-BEING-LISTED** Within The Denial Letters, and As ERISA Law and/or ERISA Case Ruling Clearly and Undeniably States, "<u>If A Participant Does</u> **NOT** <u>Receive Adequate Notice</u> With **THE-SPECIFIC-REASON(S)**, The Action **CANNOT-BE-BARRED** By The Statute Of Limitations"!

Under §502 (a)(3) / 29 U.S.C. 1132 (a)(3) It Has Been Found By The Courts That

A Beneficiary Can Petition For and Be Awarded Benefits, Back-Pay and Front-

Pay, Attorney's Fees, Damages, Interest, Injunctions, Disgorgement, Etc., As

1  Appropriate Relief. This Relief Can Also Be Obtained Under **§ 503 / 29 U.S.C §**

2  **1133** Which Encompasses Fraud and/or Concealment Etc., By A Fiduciary, Claims

3

4  and/or Plan Administrator Or Other.

5  _____

6

7  ## JURISDICTION:

8  The Supreme Court Has Stated That Federal District Courts Have Exclusive

9

10  Jurisdiction Over **§ 502(a)(3)** Claims. See **29 U.S.C. § 1132(e)(1)** Which States

11  That Federal District Courts Have Exclusive Jurisdiction Over All ERISA Claims

12

13  Except For Claims Under **§ 502(a)(1)(B)**. Under **29 U.S.C. § 1132(f)** It Is Also

14  Stated That District Courts Have Exclusive Jurisdiction Without Regard To

15  Amount In Controversy Or Parties Citizenship. Where State Law Claims Are

16  Combined With ERISA Claims, <u>Federal Courts Will Often Assert Pendent</u>

17  <u>Jurisdiction Over The State Claims</u>. Furthermore, A Case May Be <u>Removed To</u>

18

19  <u>Federal Court</u> Where A "*Well-Pleaded-Complaint*" In State Court Results In A

20  Federal Question Under ERISA. See (<u>Nishimoto v. Federman-Bachrach & Assoc.,</u>

21

22  <u>903 F.2d 709, 713 (9th Cir. 1990)).</u>

23

24  _____

25

26  ## VENUE:

27  Claims Under **§ 502(a)(3)** Are Subject To ERISA's General Venue Provision,

28

Which Allows Suits To Be Brought In Any One Of The Following Three Forums:

"**(1)** *Where The Plan Is Administered*, **(2)** *Where The Breach Took Place*, or **(3)** *Where A Defendant Resides Or May Be Found*." Because The Raytheon Plan Was Administered In The District Being Arizona and Because The Administrator and/or Fiduciary Breaches Involving Willful Fraud and Concealment Took Place In This District, It Has Been Determined This Venue Is Proper For This Case.

---

## THE PARTIE(S):

| **The Plaintiff(s).** | **The Defendant(s).** |
|---|---|
| **Claimant:** Paul E. Jozwiak, <u>Raytheon Sr. Systems,</u> <u>Aerospace Engineer</u> And <u>Plan-Participant</u> [Claimant-Plaintiff] | **Name-1:** Dr. John L. Schaller, <u>MetLife Disability</u> <u>Independent Medical Examiner,</u> And <u>Acting As A Fiduciary</u> [Defendant-Respondent] |
| **Address:** Paul E. Jozwiak, 404 South Cedar Ave., Marshfield, WI 54449 | **Address:** John L. Schaller, 10410 E. Wethersfield Rd., Scottsdale, AZ, 85259-2412 |
| **Phone:** (520)-818-4976 | **Phone:** (480)-767-2415 |

**The Defendant(s).**

| | |
|---|---|
| **Name-2:** MetLife Disability, <u>Benefits Carrier,</u> | **Name-3:** Raytheon Missile Systems, <u>Plaintiff's Employer,</u> |

<table>
<tr><td colspan="2">And</td><td colspan="2">And</td></tr>
</table>

| | |
|---|---|
| And | And |
| <u>Claims Administrator</u> | <u>Plan-Funding & Administrator</u> |
| [Defendant-Respondent] | [Defendant-Respondent] |
| **Address:** 5950 Airport Road, | **Address:** 1151 E. Herman's Rd, |
| Oriskany, NY 13424 | Tucson, AZ, 85756 |
| **Phone:** (888)-482-5246 | **Phone:** (520)-794-3000 |
| | |
| **Name-4:** Dianne D. Avellar, | **Name-5:** Joanne Bockmiller, |
| <u>Vice President,</u> | <u>Vice President,</u> |
| <u>Benefits and</u> | <u>Human Resources</u> |
| <u>Global Health Resources,</u> | <u>Operations,</u> |
| And | And |
| <u>Plan Administrator</u> | <u>Plan Administrator</u> |
| <u>For 2011 - 2013</u> | <u>For 2014 - 2015</u> |
| [Defendant-Respondent] | [Defendant-Respondent] |
| **Address:** Raytheon Corporate | **Address:** Raytheon Corporate |
| Benefits | Benefits |
| 235 Wyman Street, | 235 Wyman Street, |
| Waltham, MA 02451-1219 | Waltham, MA 02451-1219 |
| **Phone:** (781)-522-3000 | **Phone:** (781)-522-3000 |
| | |
| **Name-6:** Dr. Karen A. Haas, | **Name-7:** Dr. Arthur J. Bacon, |
| <u>Raytheon Medical</u> | <u>New Pueblo Medicine,</u> |
| <u>Center's Doctor,</u> | <u>Primary Care Doctor,</u> |
| And | And |
| <u>Acting As A Fiduciary</u> | <u>Acting As A Fiduciary</u> |
| [Defendant-Respondent] | [Defendant-Respondent] |

**Address:**   Karen A. Haas,

5151 W. Sweetwater Dr.,

Tucson, AZ, 85745-9362

**Phone:**   (520)-743-0741

**Name-8:**   Sean T. Kurysh,

**(Past)** Raytheon Human

Resources Manager,

And

Acting As A Fiduciary

[Defendant-Respondent]

**Address:** 34 Sequoia Grove Way,

American Canyon,

CA, 94503-1466

**Phone:**   (303)-324-3203

**Name-10:** Mary W. Richardson,

Raytheon Medical

Center's Nurse,

And

Acting As A Fiduciary

[Defendant-Respondent]

**Address:**  Mary W. Richardson,

4425 N. Placita-De-Las-Colinas,

Tucson, AZ, 85745-9734

**Phone:**   (520)-743-1637

**Address:**   Arthur J. Bacon,

4935 E. Parade Ground Loop,

Tucson, AZ, 85712-6623

**Phone:**   (520)-318-9566

**Name-9:**   Veronica Thomas,

Raytheon Human

Resources Manager,

And

Acting As A Fiduciary

[Defendant-Respondent]

**Address:**   Raytheon Systems,

1151 E. Herman's Rd,

Tucson, AZ, 85756

**Phone:**   (520)-794-3000

**Name-11:**  Patricia A. Brutscher,

Raytheon Medical

Center's Nurse,

And

Acting As A Fiduciary

[Defendant-Respondent]

**Address:**   Patricia A. Brutscher,

8401 S. Kolb Rd., Unit 142,

Tucson, AZ, 85756-9616

**Phone:**   (520)-204-0643

| | |
|---|---|
| **Name-12:** Guy C. Slominski, | **Name-13:** Beth A. Green, |
| Raytheon Management | Metropolitan Life |
| Engineering Supervisor, | Nurse Consultant, |
| And | And |
| Acting As A Fiduciary | Acting As A Fiduciary |
| [Defendant-Respondent] | [Defendant-Respondent] |
| **Address:** Guy C. Slominski, | **Address:** Metropolitan Life, |
| 6805 W. Tombstone Way, | P.O. Box 14590, |
| Tucson, AZ, 85743-1056 | Lexington, KY 40511-4590 |
| **Phone:** (520)-744-1608 | **Phone:** (888)-482-5246 ext 1778 |

---

# TABLE OF AUTHORITIE(S):

**A.** In (Caputo v. Pfizer, Inc., 267 F.3d 181, 190 (2d Cir. 2001)). *"The Second Circuit, holds that this 6-YEAR period is not limited to cases of fraudulent concealment. Instead, it reads the text literally to refer to either fraud or concealment so that the 6-YEAR statute of limitations should be applied to cases in which a fiduciary:* **(1)** *Breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or* **(2)** *Engaged in acts to hinder the discovery of a breach of fiduciary duty."*

**B.** In (Glenn v. Metropolitan Life Ins. Co., 2005 WL 1364625 at *4 (S.D.Ohio, June 8, 2005)); *"The Supreme Court held that when the administrator determines eligibility and pays the benefits out of its own pockets, a conflict of interest arises."*

**C.** In (Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir. 1998)); *"The Courts found an inherent conflict of interest in self-funded and administered*

*plans*."

**D.** In (White v. Jacobs, Eng'g Grp. Long Term Disability Benefit Plan, 896 F.2d 344, 350 (9th Cir. 1989)); "*When a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is NOT triggered.*"

**E.** In (Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335, 342 (3d Cir. 1996)); "*When a letter terminating or denying plan benefits does NOT explain the proper steps for pursuing review of the termination or denial, the plan's time bar for such a review is NOT triggered.*"

**F.** In (White v. Aetna Life Ins. Co., 210 F.3d 412, 416 (D.C. Cir. 2000)); "*Holding Deadline NOT triggered if administrator failed to substantially comply with § 1133.*"

**G.** In (Yancy v. United of Omaha Life Insurance Co., F. Supp. 3d, 2015 WL 5132086 (C.D. California August 25, 2015)); "*Because the record reflects that United considered and even relied on [the IME] report in making its appellate determination to uphold the claim denial, United violated ERISA's procedural requirement when it failed to make the report available to plaintiff for review and comment during the appeals process.*"

**H.** In (Berger v. AXA Network LLC, 459 F.3d 804, 815 (7th Cir. 2006)); "*Holding Period Begins when plaintiffs discovered unlawful policy and NOT when employer applied policy to them.*"

**I.** In (Miller v. Am. Airlines, Inc., 632 F.3d 837, 852-53 (3d Cir. 2011)); "*A plan's termination letter was legally insufficient because the letter did NOT provide specific reasons for the termination, written in language a participant could understand and did NOT advise the plaintiff how he can perfect his claim in detail.*"

**J.** In (Garratt v. Walker, 164 F.3d 1249, 1256 (10th Cir. 1998)); "*An employer can discriminate within the meaning of § 510 if the employer made conditions so*

1     *difficult so as to create a <u>constructive discharge</u>.*"

2   **K.** In (<u>Zervos v. Verizon New York Inc., 277 F.3d 635, 648 (2d Cir. 2002)</u>); "*A*

3     *remand of an ERISA action seeking benefits <u>is inappropriate</u> where the*

4     *difficulty is not that <u>the administrative record was incomplete</u> but that <u>a denial</u>*

5     *<u>of benefits based on the record was unreasonable</u>.*"

6   **L.** In (<u>Grossmuller v. International Union, United Auto., Aerospace Agric.</u>

7     <u>Implement Workers of Am., UAW, 715 F.2d 853, 858-59 (3d Cir. 1983)</u>);

8     "*Finding a case, where <u>the review of the medial evidence was arbitrary and</u>*

9     *<u>capricious or unreasonable</u>, the proper remedy is to <u>retroactively grant benefits</u>*

10     *<u>without a remand</u>.*"

11   **M.** In (<u>Govindarajan v. FMC Corp., 932 F.2d 634, 637 (7th Cir. 1991)</u>); "*Finding*

12     *that the insurer <u>conducted a selective review of the medical evidence</u> and*

13     *<u>reached a conclusion that was unreasonable</u>, the proper remedy is to*

14     *<u>retroactively grant benefits without a remand</u>.*"

15   **N.** In (<u>Thomas v. CIGNA Group Ins., 2015 WL 893534 (E.D.N.Y. 2015)</u>); "*A*

16     *Federal Court held that posting a Summary Plan Description <u>(SPD)</u> on a*

17     *<u>company intranet site</u> without additional action <u>does NOT satisfy ERISA's</u>*

18     *<u>distribution requirements</u>.*"

19   **O.** In (<u>Mattei v. Mattei, 126 F.3d 794, 806 (6th Cir. 1997)</u>); "*After determining that*

20     *§ 510 prohibits actions beyond employee-employer relationship, the court*

21     *determined that <u>plaintiff could properly sue estate</u> that prevented her from*

22     *obtaining ERISA benefits.*"

23   **P.** In (<u>Tingey v. Pixley-Richards W., Inc., 953 F.2d 1124, 1132 n.4 (9th Cir.</u>

24     <u>1992)</u>); "*<u>Action for interference with benefits was proper</u> against both employer*

25     *and insurer that allegedly <u>coerced employer to fire plaintiff</u>.*"

26   **Q.** In (<u>Straus v. Prudential Emp. Sav. Plan, 253 F. Supp. 2d 438, 447-48 (E.D.N.Y.</u>

27     <u>2003)</u>); "*Former employees and beneficiaries are entitled to bring claims under*

1    *§ 510."*

2  **R.** In (<u>Warner v. Buck Creek Nursery, Inc., 149 F. Supp. 2d 246, 257-58 (W.D.</u>

3    <u>Va. 2001</u>)); *"Due to broad definitions for "<u>person</u>" and "<u>discriminate</u>,"*

4    *<u>corporate directors can be sued individually</u> under § 510 even if they were*

5    *acting in their corporate capacity."*

6  **S.** In (<u>Choi v. Mass. Gen. Physicians Org., Inc., 66 F. Supp. 2d 251, 254 (D. Mass.</u>

7    <u>1999</u>)); *"Accepting that § 510 prohibits actions beyond the employee-employer*

8    *relationship, <u>the court allowed suit against a defendant who was a former</u>*

9    *<u>employer</u> at the time of the alleged interference."*

10 **T.** In (<u>Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 397 (5th Cir. 2006)</u>);

11   *"<u>Remand to the plan administrator was unnecessary</u> when the administrator*

12   *<u>failed to substantially comply with procedural requirements, abused its</u>*

13   *<u>discretion in terminating the claimant's benefits, and failed to develop its</u>*

14   *<u>factual record</u> at the administrative level."*

15 **U.** In (<u>Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1289 (10th Cir. 2002)</u>);

16   *"Remand for further action is unnecessary only if the evidence clearly shows*

17   *that the <u>administrator's actions were arbitrary and capricious</u>, or where the*

18   *<u>case is so clear cut</u> that it would be <u>unreasonable for the plan administrator to</u>*

19   *<u>deny the application for benefits on any ground</u>."*

20

21 **V.** In (<u>Krohn v. Huron Mem'l Hosp., 173 F.3d 542 (6th Cir. 1999)</u>); and (<u>Unisys</u>

22   <u>Corp. Ret. Med. Benefits ERISA Litig., 579 F.3d 220, 228–29 (3d Cir. 2009)</u>);

23   *"The <u>failure to disclose will NOT be excused</u> because the plan participant <u>failed</u>*

24   *<u>to ask precisely the right question</u>."*

25 **W.** In (<u>Rakoczy v. Travelers Ins. Co., 914 F. Supp. 166, 172 (E.D. Mich. 1996)</u>);

26   *"<u>A merely conclusory statement</u> that benefits should be denied does NOT*

27   *constitute a "<u>specific reason</u>" for the denial."*

28 **X.** In (<u>United States v. Thompson, No. CR 16-10014-PBS, 2016 WL 4771060 (D.</u>

Mass. Sept. 13, 2016)); "*The district court held the indictment was sufficient with respect to required elements of each offense, and the indictment sufficiently alleged that Defendants, Spouses who jointly owned and operated their own Company, were charged with eighteen counts of mail fraud under 18 U.S.C. § 1341, one count of theft or embezzlement from an employee benefit plan under 18 U.S.C. § 664, and eighteen counts of making false ERISA statements under 18 U.S.C. § 1027!*"

**Y.** In (Schaub v. Consol. Freightways, Inc. Extended Sick Pay Plan, 895 F. Supp. 1136, 1143 (S.D. Ind. 1995)); "*Notice denying disability benefits was inadequate when plan had evidence in the file raising doubts as to its conclusion and plan failed to address those doubts in its notice.*"

**Z.** In (Olive v. Am. Express Long Term Disability Benefit Plan, 183 F. Supp. 2d 1191, 1197 (C.D. Cal. 2002)); "*Plan administrator's letter denying benefits did NOT substantially comply with § 1133 because it failed to make clear whether claim was being denied as procedurally deficient as a result of certain required records being missing, or whether it was substantively deficient because participant's medical condition was NOT disabling, or both. The letter merely presented four conclusory statements as to the reasons for denial, without indicating sufficiency of any reason by itself.*"

**AA.** In (Perry v. Simplicity Eng'g, 900 F.2d 963 (6th U.S. Circuit Court of Appeals, 1990)); "*The Courts found that while the scope of review in ERISA cases is generally limited to the claim file, evidence outside the so-called "administrative record" may be considered if that evidence "is offered in support of a procedural challenge to the plan administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part."*"

**BB.** In (Kalish v. Liberty Mutual/Liberty Life Assur. Co., 419 F.3d 501 (6th Cir.

2005)); "*The 6th Circuit ruled for the plaintiff in a disability benefit dispute after finding "an administrator's decision based on the work of a doctor in its employ must be viewed with skepticism." The court remarked, though, that it had NOT been presented with more than a conclusory allegation of bias, and there was NO specific evidence the physician "had consistently rendered opinions favorable to the administrator," it was determined that there was a suspicion that this doctor regularly denied benefits for the plan administrator.*"

CC.    In (Conner v. Mid South Ins. Agency, Inc (W.D. La 1996), 943 F.Supp. 663); "*The court found a breach of fiduciary duty and awarded interest at the rate of 12.6% finding that it was the rate the plan assets should have earned but for the misconduct. The court also approved attorney's fees of $124,336.23 and costs of $27,494.37.*"

DD.    In (Todd Rochow et al. v. Life Ins. Co. of North America Cir. 2013); "*The Courts ruled that being awarded damages, injunctions and disgorgement under both §502 (a)(1)(B) and §502 (a)(3) is permissible. A plan beneficiary need NOT limit his/her damages as was the case, The Plaintiff, a plan beneficiary, was denied his disability benefits under his employer's insurance plan for five years. The District Court found that the insurance company wrongfully denied disability benefits and awarded the beneficiary around $3.8 million dollars based upon remedies set forth in ERISA §502 (a)(1)(B) and §502 (a)(3).*"

EE.    In (Schwartz v. Gregori, 45 F.3d 1017 (6th Cir. 1995)); "*Former employee brought action against employer and financial planning association alleging breach of fiduciary duty and retaliatory discharge under ERISA. The Sixth Circuit upheld the district court's ruling and held that back pay and front pay were both equitable remedies available under ERISA.*"

FF.    In (Schwartz v. Gregori, 45 F.3d 1017, 1021-22 (6th Cir. 1995)); "*Some defendants have argued that equitable relief does NOT include front or back*

*pay, courts however have provided those remedies finding that <u>back pay</u> was <u>appropriate equitable relief</u> because it made plaintiff whole and <u>front pay</u> was appropriate substitute for reinstatement which was NOT feasible."*

**GG.** In (<u>Kujanek v. Houston Poly Bag, Houston Poly Bag I, Ltd. ("Poly Bag")</u>); *"It was determined that the Plan Administrator failed to provide a participant with a copy of the plan's Summary Plan Description ("<u>SPD</u>") and rollover election form and therefore the Fifth Circuit upheld an award of damages and fees of more than $243,000 To The participant."*

---

## STATUTE(S):

18 U.S. Code § 664..Theft Or Embezzlement From An Employee Benefit Plan!

18 U.S. Code § 1027……………....False Statements and Concealment of Facts!

18 U.S. Code § 1341………...….…...…….…….…....Elements Of Mail Fraud!

18 U.S. Code § 1343………....……….……….…....Elements Of Wire Fraud!

28 U.S. Code § 1961……….………….………….……..Interest and Penalties!

28 U.S. Code § 2202……….……….………….……………….Further Relief!

29 U.S. Code § 1021(a)………….…............Duty of Disclosure and Reporting!

29 U.S. Code § 1022……….……….….……….Summary Plan Description!

29 U.S. Code § 1109…………….…….Liability For Breach Of Fiduciary Duty!

29 U.S. Code § 1149…....Prohibition Of False Statements and Representations!

29 U.S. Code § 1163……….…....….…….……………….Qualifying Event!

29 U.S. Code § 1166……….………….……….……..Notice Requirements!

29 CFR § 2520.102-3………....Contents Of Summary Plan Description (SPD)!

29 CFR § 2560.503-1……….……….………...…………….Claims Procedure!

45 CFR § 147.136...…Claims and/or Appeals With External Review Processes!

42 U.S. Code § 12112……….…..Discrimination (Americans With Disabilities)!

ERISA-104(b)(1) / 29 U.S. Code § 1024(b)(1)…...…….Furnishing Information!

ERISA-404(a)(1) / 29 U.S. Code § 1104(a)(1)......................Fiduciary Duties!

ERISA-406(b) / 29 U.S. Code § 1106(b)............….......Prohibited Transactions!

ERISA-413 / 29 U.S. Code § 1113…….....…....….........Limitation Of Actions!

ERISA-501 / 29 U.S. Code § 1131...................….............Criminal Penalties!

ERISA-502(a)(3) / 29 U.S. Code § 1132(a)(3)..............…....Civil Enforcement!

ERISA-502(c) / 29 U.S. Code § 1132(c)........…..........….....Civil Enforcement!

ERISA-502(e) / 29 U.S. Code § 1132(e)..............…........…..Civil Enforcement!

ERISA-502(f) / 29 U.S. Code § 1132(f)...................…...........Civil Enforcement!

ERISA-502(g) / 29 U.S. Code § 1132(g)..........….........…....Civil Enforcement!

ERISA-502(l) / 29 U.S. Code § 1132(l)...................….....…Civil Enforcement!

ERISA-503 / 29 U.S. Code § 1133....................…......…...Claims Procedure!

ERISA-510 / 29 U.S. Code § 1140..........…....Interference With Protected Rights!

ERISA-511 / 29 U.S. Code § 1141.............…..............Coercive Interference!

---

## STATEMENT OF PROVEN FACT(S):

The Plaintiff Was Employed By Raytheon Missile Systems In Tucson Arizona From **June of 2001** Through **November 2012**. At That Time He Was A Senior Systems Aerospace Engineer With An Exemplary Record and A Large Number Of Awards For Outstanding Performance In The Face Of Adverse Conditions.

1. In June 2nd, 2008 The Plaintiff Suffered a Ruptured Colon Which Led To Complications Requiring Him To Be Out Of Work For Almost The Entire Remainder Of That Year. This Surgery Was Performed By Dr. Stevenson In Which The Plaintiff Suffered Multiple <u>NEAR-FATAL</u> Infections From The Rupture and The Surgery!

2. In December 22nd, 2008 The Plaintiff Returned To St. Joseph's Hospital In Tucson Arizona To have A Colon Resection Operation. This Surgery Was AGAIN Performed By Dr. Stevenson In Which The Plaintiff Suffered Another <u>NEAR-FATAL</u> Infection During The Surgery Along With Surgical Staples and Sutures That Began Breaking Loose On **December 30th, 2008**!

3. In January 5th, 2009 The Plaintiff Returned To Work at Raytheon and Was Immediately Informed By The Human Resources Manager(s) Sean Kurysh and Veronica Thomas That He Should Resign From The Company Until He Could Get His Medical Issues Under Control. The <u>Plaintiff-Refused</u>!

4. In January 2009 Through February 2009 The Plaintiff Was Required To Make Regular Visits To The St. Joseph's Hospital Emergency Room In Tucson Arizona For Debridement Of The Abdominal Incision To Cut and Scrape Infected, Dead and Dying Tissue From The Wounds While Replacing The Sutures, Packing's and Drainage Tubes As Needed. This Was Due To The Recent Colon Resection Surgery and Done While Raytheon Required The Plaintiff To Put In Approximately <u>40-Hours</u> <u>Or More</u> Of Work Per Week!

5. In September 2nd, 2009 The Plaintiff Developed Severe Pain, Nausea, Sweats, Fatigue Etc., In Which Medical Imaging Discovered His Appendix Was About To Burst! The Plaintiff Was Rushed Into The Tucson Medical Center (<u>TMC</u>) Where He Underwent Emergency Surgery and Was Hospitalized For Approximately <u>3-Days</u>.

6. In September 15th, 2009 The Plaintiff AGAIN Developed Severe Sweats, Shakes and Extreme Pain Where He Collapsed At Work! The Plaintiff Was Taken By Ambulance To The University Medical Center South Campus Where He Was Diagnosed With C-Diff Infection From The Appendix Surgery! The Plaintiff Was Hospitalized For Approximately 5-Days, Then Ordered Back To Work By MetLife and Raytheon Or Face TERMINATION From the Company!

7. In July 20th, 2010 Sean Kurysh From Raytheon Human Resources AGAIN Contacted The Plaintiff To Discuss His Ongoing Medical Problems and Its Impact On The Company. Sean Tells The Plaintiff He Is Doing This Because Veronica Thomas, Basil Johnson and Others Had Also Decided The Plaintiff Was NOT-FIT To Be Doing Engineering Work For A Government Contractor Due To His Medical Problems! Sean AGAIN Informed The Plaintiff That He Should Resign From The Company Until He Could Resolve His Health Issues! The Plaintiff-Refused-AGAIN!

8. In August 11th, 2010 The Plaintiff Underwent The FIRST Abdominal Reconstruction Surgery By A Dr. Aramando Alfaro To Attempt To Correct The Screwed Up Colon Resection Surgery By Dr. Stevenson! This Resulted In The Plaintiff Being Out Of Work For Approximately 1-Week!

9. In September 23rd, 2010 The Plaintiff's Chronic Cough With Sweats and A Heavy White Nodular Debris, That Has Been Occurring Since **January 2009,**

Is Diagnosed As A <u>RARE Mycobacterium Avium Complex</u> and A

<u>Coccidioidomycosis Fungal Infection</u> (<u>Valley-Fever</u>).

**10.** In November 10th, 2010 The Plaintiff Underwent The SECOND Abdominal

Reconstruction Surgery By A Dr. Aramando Alfaro To attempt To Correct The

Screwed Up Colon Resection Surgery By Dr. Stevenson! This Resulted In The

Plaintiff AGAIN Being Out Of Work For Approximately <u>1-Week</u>!

**11.** In November 22nd, 2010 Veronica Thomas, Sean Kurysh, Basil Johnson, Brad

Harris and Others <u>Now-Ordered The Plaintiff To Immediately Resign From</u>

<u>The Company</u> Until He Could Resolve His Health Issues! The <u>Plaintiff-</u>

<u>Refused-AGAIN</u> and These Managers With Others Then Attempted To Force

Him To AGAIN Work In A Hazardous and Toxic Chemical Environment

<u>Against Previous Doctor's Orders</u> To Force His Resignation!

**12.** In November 26th, 2010 Raytheon Held The FIRST Meeting Against The

Plaintiff, Which Was called By Veronica Thomas, Brad Harris and Guy

Slominski <u>To Attempt To force The Plaintiff To Resign</u>! This Meeting Included

Discussions Of Basil's, Clyde's, Doan's and Other's Activities Of Using

Counterfeit CPU's On Government Hardware, Their <u>Concealment Of 3-Lost</u>

<u>Computer Hard Drives With Classified and/or Secret Information</u> On Them and

Other Activities! (<u>The Plaintiff Has Supplied To The Court A Raytheon E-Mail</u>

<u>To Be Entered Into The Record As Relevant Evidence!</u>)

**13.** In January 10th, 2011 Raytheon Held A FOURTH Meeting Against The Plaintiff Where Veronica Thomas, Sean Kurysh and One-Unidentified-Individual From Raytheon Was In Attendance. These People Asked Why The Plaintiff Thought He Had A Right To Complain To Upper Management About The Threatening Behavior Of A Manager Named Basil Johnson and To Discuss The Plaintiff's Continuing Health Issues. This Meeting Was Specifically Held To AGAIN Attempt To Force The Plaintiff's Resignation From The Company. The Plaintiff-Refused-AGAIN!

**14.** In February 10th, 2011 The Plaintiff Received A Raytheon E-Mail Sent By The Management Of The AMRAM Project Praising The Plaintiff For His Ability To Take Over and Successfully Complete The Test-Station(s) and Other Hardware Under Adverse Conditions! This E-Mail Was Sent To The Plaintiff (Paul Jozwiak), Guy Slominski, Brad Harris, Clyde Sugimoto, Sean Kurysh and Others! (Enclosed Is A Copy Of This Raytheon E-Mail For The Court To Enter As Relevant Evidence Into The Record.)

**15.** In February 10th, 2011 Raytheon Held A FIFTH Meeting Against The Plaintiff Where Veronica Thomas, Sean Kurysh, Guy Slominski and The Same-Unidentified-Individual From Raytheon Who Were At The **January 10th, 2011** Meeting Attended. The Meeting Was To Ask Questions About Why The Plaintiff Still Attempted To Complain To Upper Management About The Continual Threatening Behavior Of A Manager Named Basil Johnson Now

With A Brad Harris and Others, The Plaintiff's Continuing Health Issues and If The Plaintiff Was Going To File Any Charges Or Claims Against Raytheon! The Meeting Was Also To AGAIN Attempt To Force The Plaintiff's Immediate Resignation! The <u>Plaintiff-Refused-AGAIN</u>, However This Time The Plaintiff Was Immediately Suspended From Work Pending TERMINATION Of His Employment and Benefits! (<u>Enclosed Is A Copy Of The Raytheon E-Mail From Veronica Thomas Telling The Plaintiff Where To Report To This ILLEGAL-MEETING In Which This Report Is For The Court To Enter As Relevant Evidence Into The Record.</u>)

16. In February 10th, 2011 Raytheon Human Resources Managers Along With Others Immediately TERMINATED All The Plaintiff's <u>Employee Identification Numbers</u> and <u>Computer Access Accounts</u>! This <u>Cut-Off-Access</u> To The <u>Raytheon Benefit Plan and Policy Information</u> Along With All Other Benefit Information For The Plaintiff! Raytheon Also At That Time TERMINATED The Plaintiff's <u>Pre-Paid-Legal-Benefits</u> He Had Obtained Under The Benefit Plan! *"Veronica Thomas"* In Human Resources Claimed *"They Terminated The Legal Resources Because They Didn't Want You* (<u>The Plaintiff</u>) *To Attempt To Retaliate Against Raytheon Because That Would Then Force The Company To Take Other Action(s) Against You* (<u>The Plaintiff</u>) *To Protect Their Own Interest(s)"*!

17. In February 11th, 2011 The Plaintiff's Primary Doctor, Named Dr. Bacon, Supplied To Raytheon The Medical Records and Test Results Proving The Plaintiff Had A <u>Suppressed Immune System and Was Dealing With A Number Of Unresolved Infections</u>! This Stopped The Immediate TERMINATION Of The Plaintiff's Employment and Benefits Since It Proved Beyond All Doubt The Plaintiff's Medical Problems Were Just As He and Other Doctors Had Claimed!

18. In February 11th, 2011 The Plaintiff Began To Collect His MetLife Short Term Disability (<u>STD</u>) Benefits, But It Was Immediately Discovered MetLife Was <u>Paying Less Than **50%** Of The Required Coverage</u> (<u>Dating Back To **2008**</u>) When The Plaintiff Was Bought Into The Policy <u>At **60%** Coverage</u>!

19. In February 14th, 2011 The Plaintiff's Primary Care Doctor Named Dr. Bacon, States In The Plaintiff's Medical Reports, <u>He Received A Letter That Sean Kurysh From Raytheon HR Had Sent To Him</u>! This Letter From Sean Asked Dr. Bacon To Endorse and Send Back To Him A <u>Pre-Filled-Out-Document</u> Of Charges Against The Plaintiff <u>So He Could TERMINATE The Plaintiff's Employment</u>! The Letter and Medical Report States One Of The Reasons Is <u>Because The Plaintiff Attempted To Complain About An Engineering Manager</u>! Dr. Bacon Claims He Did NOT Endorse The Document Nor Send It Back Because He Personally Knew The Charges Were FALSE and The Plaintiff Just Wanted To Do His Job and Get Along With Everyone! (<u>Enclosed</u>

<u>Is A Copy Of This Medical Report, Which Was Part Of The Records Received By MetLife, For The Court To Enter As Relevant Evidence Into The Record.</u>)

**20.** In February 14th, 2011 Raytheon's Human Resources Manager Veronica Thomas and Sean Kurysh Were Intentionally Assigned Control Of The Plaintiff's MetLife Disability Case, However It Is Well Documented That Veronica and Sean Had Intentionally Tried To Force The Plaintiff's Resignation From The Company A Multitude Of Times!

**21.** In March 9th, 2011 A Beth Green From MetLife Called The Plaintiff To Tell Him She Spoke To Pat Brutscher At Raytheon About His Being Required To Immediately Apply For Social Security Benefits Or His Disability Benefits From MetLife Would Be Either Denied Or TERMINATED.

**22.** In **March 2011** Through **July 2013** The Plaintiff Made A Number Of Phone Calls To Beth Green At MetLife, Veronica Thomas In Raytheon Human Resources and A Dr. Karen Haas With A Pat Brutscher At Raytheon Medical Where He Continually Asked For The MetLife Or Raytheon Disability Plan/Policy! The Response Was Always; *"It is being sent out TODAY"*, Or; *"We already sent it so you should look around your place for a missing FEDEX Envelope that got misplaced."*

**23.** In April 11th, 2011 Beth Green At MetLife Called The Plaintiff To Ask Him To Obtain All His Medical Records Pertaining To His Current Disability and Immediately Mail Them To Her At The Address She Provided To Him. The

Medical Documents Requested Were Those From Dr. Bacon and Dr. Stevenson Regarding The Plaintiff's Care For The **January 2007** To **March 2011** Time Frame. (**NOTE:** The RRS Evaluation For **September 11th, 2012** Performed By Alan R. Altman In Which He Lists Medical Records From The Plaintiff's Doctors Dating Back To **October 13th, 2009**!)

24. In April 14th, 2011 MetLife Discussed Their Notes With The Plaintiff Regarding Their; "*DX; immune deficiency with slow healing skin lesions, mild sweats and fatigue with a presence of an infection per an ER* (Emergency Room) *statement on file!*" (This Report Is On Page 314 Of The Administrative Transaction Record!)

25. In April 22nd, 2011 MetLife Transitioned The Plaintiff's Claim From Short Term Disability (STD) To Long Term Disability (LTD). The LTD Continued Until MetLife and Raytheon TERMINATED All Benefits and Employment On **November 21st, 2012**! (This Report Is On Page 310 Of The Administrative Transaction Record!)

26. In May 18th, 2011 There Is A Message In The MetLife Record That Reads; "*Claim Was originally paying at 50% coverage. Per review of Peoplesoft/UIS EE has 60% LTD Coverage.*" Neither MetLife Nor Raytheon Ever Corrected This Problem Even Though They Continued To Claim They Would Do So! (This Report Is On Page 295 Of The Administrative Transaction Record!)

27. In May 24th, 2011 The Plaintiff Mailed Letters For The FIRST-TIME To Beth

Green At MetLife Along With A Dr. Karen Haas and Veronica Thomas At

Raytheon Requesting The ENTIRE MetLife Or Raytheon Plan/Policy For His

Disability Coverage!

28. In May 27th, 2011 There Is A Message In The MetLife Record That Reads;

*"There were pieces of what looked like <u>large diameter sutures sticking out</u> of*

*his skin being about an inch in length!"* This Report Is Due To The Plaintiff

Suffering From Broken Surgical Staples and Sutures Within The Body Cavity

Causing Organ Distress and Infections Before One Occasionally Forced Its

Way Out Through The Body. This Problem Was Also Seen By Dr. Bacon and

Dr. Tsai In Their Offices On Two Other Occasions. (<u>This Report Is On Page</u>

<u>290 & 291 Of The Administrative Transaction Record!</u>)

29. In June 13th, 2011 Dr. Bacon Documents Within His Medical Records The

Plaintiff Was Suffering From A Problem Where Surgical Staples and/or Sutures

Were Breaking Up Within The Body Cavity Before Eventually Working Their

Way Out Through The Plaintiff's Skin! (<u>See The Supplied Copies Of Dr.</u>

<u>Bacon's MISSING Medical Records Dated **December 30th, 2008,** Which First</u>

<u>Identified This Problem, and The **June 13th, 2011** Record In Which Both</u>

<u>Records Were Actually Supplied To MetLife and Raytheon For Their Files!</u>)

30. In July 14th, 2011 There Is A Message In The MetLife Record That Reads;

*"DX: Immune disorder which is affecting skin / increased fatigue & stamina.*

*EE continues to have condition addressed with HCPS resulting in various*

*courses of treatment. ER STATEMENT ON FILE.*" (<u>This Report Is On Page 263</u>

<u>Of The Administrative Transaction Record!</u>)

31. In August 9th, 2011 There Is A Medical Report By A MetLife Disability RN

Named Debbie McAloon In The MetLife Administrative Record Where She

States; "*The claimant has a health problem which is an Immune Deficiency!*"

32. In December 5th, 2011 The Plaintiff Discovered <u>His-Office-Had-Been-Cleaned-</u>

<u>Out</u> and All His Belongings Were Missing! The Plaintiff Immediately Sent An

E-Mail To Veronica Thomas At Raytheon HR In Which Veronica Claims She

Will Check On It and Then Refuses To Respond When Asked For An Update!

(<u>Enclosed Is A Copy Of This Raytheon E-Mail From The HR Manager</u>

<u>Veronica Thomas For The Court To Enter As Relevant Evidence Into The</u>

<u>Record</u>.)

33. In December 20th, 2011 The Plaintiff Had His FIRST-APPOINTMENT With

Dr. Gray In Benson Arizona!

34. In January 4th, 2012 There Is A Message In The MetLife Record That Reads;

"*Dr. Bacon comments EE may RTW on January 20, 2012 with the restrictions*

*of NO exposure to toxins or chemicals.*" (<u>This Report Is On Page 201 Of The</u>

<u>Administrative Transaction Record!</u>)

35. In January 20th, 2012 There Was A FIRST Fit-For-Duty-Review Performed On

The Plaintiff At The Raytheon Medical Center. Dr. Bacon Authorized A

Return-To-Work With Medical Restrictions Of A 40-Hour Work Week and

NO-MORE-EXPOSURE To Chemicals, Gasses and Toxins! Raytheon Rejected The Medical Restrictions and Refused To Allow The Plaintiff To Return-To-Work! (<u>The Plaintiff Now Hand-Delivered-Letters To Dr. Karen Haas and Veronica Thomas At Raytheon Requesting The MetLife Or Raytheon Plan/Policy Since It Still Had NOT Arrived!</u>)

36. In January 20th, 2012 There Is A Message In The MetLife Record That States Dr. Haas At Raytheon Medical Has Determined; *"Paul Is Still NOT-FIT To Return To Work Due To Skin Lesions, Body Odor and Fatigue"*! (<u>This Report Is On Page 183 Of The Administrative Transaction Record!</u>)

37. In January 23rd, 2012 There Was A SECOND Fit-For-Duty-Review Performed On The Plaintiff At The Raytheon Medical Center. Dr. Bacon Authorized Another Return-To-Work With Medical Restrictions Of A 40-Hour Work Week and NO-MORE-EXPOSURE To Chemicals, Gasses and Toxins! Raytheon AGAIN Rejected The Medical Restrictions and Refused The Return-To-Work!

38. In January 24th, 2012 There Is A Message In The MetLife Record That States; *"Return To Work Potential; <u>None until there is an effective treatment</u>."* (<u>This Report Is On Page 181 Of The Administrative Transaction Record!</u>)

39. In February 9th, 2012 There Is A Message In The MetLife Record That States; *"All information on file supports through our current pay through date of 08/10/2012. <u>It is unclear if EE will have RTW potential to any job</u> when the definition of disability changes from own occ to any job on 08/11/2012."* (<u>This</u>

<u>Report Is On Page 173 Of The Administrative Transaction Record!</u>)

40. In February 10th, 2012 The Plaintiff Obtained Copies Of Dr. Gray's Medical Reports and Immediately Mailed This First Set To Beth Green At The MetLife Address She Provided! The Plaintiff Also Made Multiple Copies So He Could Provide These Same Medical Records To Dr. Bacon, Raytheon Medical and Others During His Next Appointments. (<u>Since Dr. Gray's Contact Information Was On These Medical Records, WHY Did MetLife Continually Enter FALSE Statements Into The Record Claiming They Were Always Asking For, Or Waiting For The Plaintiff To Provide Dr. Gray's Contact Information</u>?)

41. In February 21st, 2012 There Is A Message In The MetLife Record That States; "***A blood test shows that Paul's immune system is fighting something with great intensity***!" This Blood Test Report Came From Dr. Gray's Medical Records Which Were Now In The Hands Of MetLife, Raytheon and Others. (<u>This Report Is On Page 166 Of The Administrative Transaction Record!</u>)

42. In February 21st, 2012 There Is A Message In The MetLife Record That States; "***Director. Dr. Bacon has NOT returned call requests for a Peer-To-Peer Dialogue!***" This Was Discovered To Be A FALSE Statement By Those At MetLife! (<u>This Report Is On Page 166 Of The Administrative Transaction Record!</u>)

43. In February 22nd, 2012 There Is A Message In The MetLife Record Stating The Plaintiff Discussed Dr. Gray's Lab Results With MetLife Disability Regarding

Immune Markers Being At 44,000 When It Should NOT Go Above 4,000.

(This Report Is On Page 163 Of The Administrative Transaction Record!)

44. In February 24th, 2012 There Is A Message In The MetLife Record That NOW States They Are Still Waiting For The Plaintiff To Provide Dr. Gray's Contact Information To MetLife Disability! This Was Discovered To Be Another FALSE Statement As The Plaintiff Was NEVER Informed Of Such A Problem By MetLife Nor Raytheon! (This Report Is On Page 161 Of The Administrative Transaction Record!)

45. In February 28th, 2012 There Is A Message In The MetLife Record That . AGAIN States They Are Still Waiting For The Plaintiff To Provide Dr. Gray's Contact Information To MetLife Disability! This Was Discovered To Be Another FALSE Statement As The Plaintiff Was NEVER Informed Of Such A Problem By MetLife Nor Raytheon! (This Report Is On Page 158 Of The Administrative Transaction Record!)

46. In March 5th, 2012 There Is A FAX Document In The MetLife Administrative Record That States The Plaintiff Personally Delivered Dr. Gray's Medical Records To **Bobbie Brown** (Another Mis-Statement By MetLife as it is **Bobbie Shepard, NOT Bobbie Brown**!) and She Is Wondering What To Do About Them! This Statement AGAIN Contradicts The MetLife Claim They Had NOT Received Medical Records Or Contact Information From The Plaintiff and Dr. Gray Until **August 2nd, 2012**! (Where Are Bobbie Shepard's, Other Doctors

and Over **50%** Of Dr. Bacon's Medical Records That Are Required To Be

Within The **COMPLETE Administrative Record** The Plaintiff Requested?)

47. In March 14th, 2012 There Is A Message In The MetLife Record That AGAIN

States They Are Still Waiting For Paul To Provide Dr. Gray's Contact

Information To MetLife Disability! This Was Discovered To Be Another

FALSE Statement As The Plaintiff Was NEVER Informed Of Such A Problem

By MetLife Nor Raytheon! (This Report Is On Page 157 Of The Administrative

Transaction Record!)

48. In March 22nd, 2012 There Is A Message In The MetLife Record Regarding Dr.

Gray Telling Paul To NOT Let Dr. Bacon and Dr. Tsai To Have Ablation Of

The Nerves Of The Stomach Performed Because It Is A Mistake! This

Procedure Was Ordered By Dr. Bacon and Dr. Tsai In Order To Eliminate The

Severe Pain Radiating From The Left Side Colostomy Site Which Was Already

Diagnosed As Being From Broken Surgical Staples and/or Sutures! (This

Report Is On Page 153 Of The Administrative Transaction Record!)

49. In April 10th, 2012 SSI Sent The Plaintiff Their FIRST Records Request and

First Disability Evaluation Request To Be Performed By Dr. Gray Which Was

Made Available To The AZ Department Of Economic Security and Others Who

Would Request It! MetLife NEVER Obtained This Evaluation From Dr. Gray,

However The Plaintiff Furnished It To MetLife and Raytheon Only To

Discover That It Was Also MISSING From The Administrative Record Along With Most Of The Plaintiff's Medical Records!

50. In April 24th, 2012 There Is A Message In The MetLife Record That States The Plaintiff Provided His Medical Records From Dr. Gray To **Bobbie Brown** (It Is Supposed To Be **Bobbie Shepard** NOT **Bobbie Brown**!) In Which She Claims She Did NOT Perform Any Exam On The Plaintiff While He Was There. <u>See The FAX Document Dated **10-20-2011**</u> In Which MetLife's Own Mark Herrington Actually Calls This Practitioner; *"**Bobbie Shepard**"* and Refers To Her Place Of Work As; *"**Immune Recovery**"*! Why Did MetLife Suddenly Change Her Name To; *"**Bobbie Brown**"*? (This Report Is On Page 149 Of The Administrative Transaction Record!)

51. In May 7th, 2012 There Is A Message In The MetLife Record That States; *"The info from Dr. Gray that Paul provided!"* This Is For Another Updated Set Of Dr. Gray's Records Being Provided To Dr. Bacon and Others. (This Report Is On Page 147 Of The Administrative Transaction Record!)

52. In May 8th, 2012 There Is A Message In The MetLife Record That States; *"**Please disregard entry 5/7/12 1:02 pm RRN POA.**"* and Also; *"**Does NOT belong on this claim (regarding calling and f/u with Dr giles, Dr Glynn and Dr Whittman.) Beth Green RRN.**"* This Problem Is Due To An INCORRECT-ENTRY Where MetLife Occasionally Entered Information From A Different Claimant's Administrative Record Into This Plaintiff's Administrative Record!

(This Report Is On Page 146 Of The Administrative Transaction Record!)

53. In May 9th, 2012 There Is A Message In The MetLife Record That States; *"ov note. He hand wrote that EE did NOT provide medical and that EE may RTW now 40 hours/week as long as he is NOT exposed To noxious chemicals or Toxins."* See The Reports Dated **February 21st, 2012** and **June 21st, 2012** Showing This To Be Another FALSE Statement As MetLife Was At That Time Claiming In Their Record They Could NOT Get Dr. Bacon To Respond To Their Inquiries! (This Report Is On Page 144 Of The Administrative Transaction Record!)

54. In May 9th, 2012 There Is A FAX Document Within The MetLife Administrative Record Showing MetLife FAXED A Medical Record Request To Dr. Gray Showing The Correct Address As Being; ***"The Progressive Health Care Group"*** and Correct Phone Number Being; ***"(520)-586-9111."*** The Problem Is This FAX Appears To have NEVER-BEEN-SENT and/or RECEIVED Since A Full Search By Dr. Gray and His Personnel Discovered The ONLY Request For Records By MetLife Was On **June 13th, 2013**! (Enclosed Is A Copy Of Dr. Gray's Letter Verifying These Claims For The Court To Enter As Relevant Evidence Into The Record.)

55. In May 9th, 2012 There Is A Message In The MetLife Administrative Record That States They Are Waiting For A Response From Dr. Gray, But They Have Current Medical From Dr. Bacon. This Is A FALSE Statement Since The

Claims Record Actually Shows Dr. Gray's Reports Provided By The Plaintiff On **February 21st, March 5th, March 22nd, April 24th** and **May 7th** Of **2012** Which Were SCANNED-IN To Administrative Record By MetLife On **May 29th, 2012!** (This Report Is On Page 141 Of The Administrative Transaction Record!)

56. In May 11th, 2012 There Was A THIRD Fit-For-Duty-Review Performed On The Plaintiff At The Raytheon Medical Center. Dr. Bacon Authorized Another Return-To-Work With Medical Restrictions Of A 40-Hour Work Week and NO-MORE-EXPOSURE To Chemicals, Gasses and Toxins! Raytheon AGAIN Rejected The Medical Restrictions and Refused The Return-To-Work! The Plaintiff AGAIN Hand-Delivered-Letters Requesting The MetLife Or Raytheon Plan/Policy To Dr. Karen Haas, But Veronica Thomas Refused To See The Plaintiff Or Accept The Letter Left For Her With Dr. Haas! Dr. Haas Stated At This Review, The Plaintiff Should Find A Different Company To Work For That Would Appreciate His Abilities More Than Raytheon! She Also Stated It Was Proven The Managers With Others At Raytheon Were Those Found To Be Threatening and Violent Towards The Plaintiff! (The Plaintiff **CAN-PROVE** To The Court That Dr. Haas, Pat Brutcher and Others Made These Statements!)

57. In May 14th, 2012 There Is A Message In The MetLife Record That States; "*Dr. Haas Says Paul Is Still NOT Stable For A Return-To-Work Yet*"! (This Report Is On Page 139 Of The Administrative Transaction Record!)

58. In May 14th, 2012 There Is A Message In The MetLife Record That States:

"*Will request the notes in early June From **Dr. Goldberg*** (It's Supposed To Be **Dr. Goldfinger**) *and **Dr. Grey*** (It's Supposed To Be **Dr. Gray**) *and ask about the nonspecific inflammatory markers.*" (This Report Is On Page 136 Of The Administrative Transaction Record!)

59. In May 25th, 2012 There Is A Message In The MetLife Record That States;

"*Request the notes in early June from **Dr. Goldberg*** (It's Supposed To Be **Dr. Goldfinger**) *and **Dr. Grey*** (It's Supposed To Be **Dr. Gray**). *Ask for updates on inflammatory markers.*" (This Report Is On Page 124 Of The Administrative Transaction Record!)

60. In May 29th, 2012 MetLife Now Scanned A FIRST-Partial-Set Of Medical Records and Lab Reports From Dr. Gray Into The MetLife Administrative Record Which Only Totaled 16-Pages! The Page Numbers On Dr. Gray's Records Show There Should Be A Minimum Of 26-Pages, NOT Counting Various Emergency Room Reports From 4 Different Visits Consisting Of Another 40-Pages That Were Also Part Of Dr. Gray's Medical Report! This Criminal Act Of Scanning In A Partial Set Of The Plaintiff's Medical Records, Then Withholding Them From The Various Evaluations Until **August 2012** Was First Discovered By The Plaintiff After **September 9th, 2014.**

61. In May 29th, 2012 There Is A Message In The MetLife Record That States;

"*Request the notes in early June from **Dr. Goldberg*** (It's Supposed To Be **Dr.**

**Goldfinger**) *and* **Dr. Grey** (It's Supposed To Be **Dr. Gray**). *Ask for updates on inflammatory markers."* (This Report Is On Page 126 Of The Administrative Transaction Record!)

62. In June 4th, 2012 The Plaintiff Had His FIRST Appointment With Dr. Goldfinger In Tucson Arizona At The Referral Of Dr. Gray! This Is To Attempt To Determine Why The Plaintiff Had Been Having Occasional Heart-Attack-Like-Conditions A Multitude Of Times Requiring Him To Be Hospitalized.

63. In June 12th, 2012 There Was A Cardiology Test Performed On The Plaintiff By Dr. Goldfinger At The Request Of Dr. Gray. This Was To Determine What Was Causing The Occasional Heart-Attack-Like-Conditions.

64. In June 14th, 2012 Cardiology Medical Report(s) For The Plaintiff Are Sent From Dr. Goldfinger and Received By Dr. Gray For His Medical File(s). Dr. Goldfinger Discovered The Plaintiff Had An Enlarged Heart With An Aortic Aneurism At The Aortic Branch! (This Diagnosis Was Confirmed In **2012** Through **2017** By Other Medical Centers Including Those In Wisconsin and Can Be Provided As Relevant Evidence To The Court Upon Request!)

65. In June 18th, 2012 There Is Another FALSE Statement In The MetLife Record That States They Are Waiting For The Plaintiff To Provide Notes From **Dr. Goldberg** (It's Supposed To Be **Dr. Goldfinger**) and **Dr. Grey** (It's Supposed To Be **Dr. Gray**). (This Report Is On Page 123 Of The Administrative Transaction Record!)

66. In June 18th, 2012 There Is A FAXED Medical Record Request In The MetLife Record To Dr. Gray For A Full Set Of The Plaintiff's Medical Records Which Claims Dr. Gray Mailed A CD To Them On **July 27th, 2012!** This Was Discovered To Be Another FALSE Statement As Dr. Gray and His Medical Staff Did A Full and Through Search Where They Found The Only-Request For Medical Records By MetLife Was On **June 13th, 2013** Per His Supplied Official Letter! (This Statement By MetLife Is Due To The **Typed-Date** On Their FAX Claiming The Request Was Sent On **June 18th, 2012** While A **Stamped-Date** On The FAX Document Claims It To Be Sent On **June 19th, 2012** But A **Hand-Written-Date** Shows The FAX Was Intended To FIRST-BE-SENT On **July 22nd, 2012!** --- NOTE The **June 18th, 2012** Document's **Scan-In-Date** To The Administrative Record With A **Hand-Written-Date** Of **July 22nd, 2012** On It!)

67. In June 21st, 2012 There Is A Message In The MetLife Record That States; "*It is difficult to get medical from providers! You made attempts to speak with PCP, Dr. Bacon, in the past, however he did NOT return your calls!* " This FALSE Statement By MetLife's Own Beth Green and A Dr. Monkofsky Contradicts This Administrative Record and Dr. Bacon's Own Medical Records For The Plaintiff As It Is Well Documented That Dr. Bacon Was Always Doing The Pre-Physicals For The Fit-For-Duty Reviews. (This Report Is On Page 120 Of The Administrative Transaction Record!)

68. In June 21ˢᵗ, 2012 There Is A Medical Report By Dr. Bacon In The MetLife Record Where It States Raytheon Is <u>AGAIN Refusing-To-Accommodate</u> The Necessary Medical Restrictions For The Plaintiff To Return-To-Work In Which Raytheon Is Claiming; "***<u>Restrictions for a 40 hour week, and NO exposures to noxious substances could be met</u>***." This FALSE Statement By MetLife and Raytheon Shows Their <u>Pre-Determined Intent To TERMINATE</u> The Plaintiff's Benefits and Employment! (<u>This Report By Dr. Bacon Also Shows The MetLife Reports For **February 21ˢᵗ, 2012** and **May 9ᵗʰ, 2012** Are FALSE Due To His Being In Constant Contact With MetLife and Raytheon Since He Was Doing The Medical-Restrictions and Pre-Physicals For Their Fit-For-Duty-Reviews</u>!)

69. In June 25ᵗʰ, 2012 There Is A Message In The MetLife Record That States; "***<u>Did NOT download</u> Summary Medical Director's response.***" This Report Raises The Key Question As To <u>WHY Did MetLife Intentionally Block This Medical Director's Response</u> From The Administrative Record! (<u>This Report Is On Page 115 Of The Administrative Transaction Record!</u>)

70. In June 25ᵗʰ, 2012 There Is A Report In The MetLife Record Where Beth Green For MetLife States; "***<u>She Has In Her Possession Lab-Work From Dr. Gray Provided By The Claimant Since January 2012</u>***!" (<u>The Key Questions To Ask Is WHY Did Beth Green With Others Tell Dr. Schumacher and Other(s), There Were NO-MEDICAL-RECORDS From The Plaintiff's Dr. Gray While</u>

Intentionally Withholding These Records From The **July 2012** and Other IME

Evaluations?)

71. In June 27th, 2012 There Is A Message In The MetLife Record That States They

Are Requesting That Paul Help Them Obtain Dr. Gray's and Dr. Goldfinger's

Medical Records Since They Still Have NOT Responded! This Was Discovered

To Be Another FALSE Statement In The Administrative Record As Neither

MetLife Nor Raytheon Ever Claimed They Were NOT Getting Any Response

From A Doctor As The Plaintiff Was Also Continually Supplying The Medical

Records and Contact Information To Everyone As Fast As It Became

Available. Where Are The **E-Mails** and/or **Letters** To The Plaintiff In-The-

Administrative-Record Proving These Claims and Why Do Previous Record

Entries Show They Received These Medical Records For These Very Same

Doctors? (This Report Is On Page 114 Of The Administrative Transaction

Record!)

72. In June 27th, 2012 There Is A Message In The MetLife Record That States Beth

Green At MetLife Called The Plaintiff and Asked Him To Obtain A Complete

Set Of Medical Records From The Cardiologist Named Dr. Goldfinger and To

Send Them To MetLife For His Disability File While Providing His E-Mail

Address (Which They Always Had From The Start). The Plaintiff Obtained

These Medical Records and Mailed Them A Copy On **June 27th, 2012**. The

MetLife Record Then Further States; *"EE has NOT sent actual office notes*

***From Dr. Michael Gray in Benson 866-586-9111***", However This FALSE Statement In The MetLife Record Actually Lists Dr. Gray's Correct Contact Information With Various Medical Records Already Entered Into The Record! This Disproves The Statements Where MetLife Claimed They Had NOT Received Contact Information Or Medical Records From Dr. Gray For The Plaintiff! (This Report Is On Page 113 Of The Administrative Transaction Record!)

73. In June 29th, 2012 MetLife Schedules A Disability Review With Their Own Independent Medical Examiner (IME) Named Dr. Schumacher Which Was Scheduled For The Plaintiff On **July 10th, 2012**. (This Report Is On Page 112 Of The Administrative Transaction Record!)

74. In July 1st, 2012 MetLife Now Enters Another Blank-Health-Disclosure-Statement Into The Administrative Record. There Are Many-Other-Blank-Documents That MetLife Entered Into The Administrative Record Without The knowledge Of The Plaintiff.

75. In July 2nd, 2012 There Is A Message In The MetLife Record That AGAIN States They Are Requesting The Plaintiff Provide Dr. Gray's and Dr. Goldfinger's Medical Notes To MetLife Disability and The Contact Information For Both Doctors! This Was Discovered To Be Another FALSE Statement As The MetLife Record Actually Shows Dr. Gray's Reports Were SCANNED-IN To Administrative Record By MetLife On **May 29th, 2012**!

<u>(This Report Is On Page 111 Of The Administrative Transaction Record!)</u>

76. In July 3rd, 2012 There Is A Message In The MetLife Record That States They Now Received Dr. Goldfinger's Medical Reports From The Plaintiff! (<u>This Report Is On Page 110 Of The Administrative Transaction Record!</u>)

77. In July 6th, 2012 There Is A FALSE Statement In The MetLife Record That AGAIN States They Are <u>Still Waiting For Medical Information From Gray</u> and Now New Contact Information For A Toxicologist/ Immunologist In Phoenix. The New Doctor's Contact Information Was Provided To MetLife In Early **June 2012**! (<u>This Report Is On Page 103 Of The Administrative Transaction Record!</u>)

78. In July 9th, 2012 There Is A FALSE Statement In The MetLife Record That AGAIN States They Are <u>Still Waiting For Medical Information From Dr. Gray</u> and New Contact Information For A Toxicologist/Immunologist In Phoenix <u>Who Was Now Refusing To See Or Treat The Plaintiff</u> Due To Phone Calls By Dr. Bacon, Dr. Haas and MetLife! This Doctor Claimed They Refused Medical Care Due To <u>It NOT Being Authorized</u> Under The Insurance Plan Where MetLife and Raytheon Specifically Told The Plaintiff It Was! (<u>This Report Is On Page 103 Of The Administrative Transaction Record!</u>)

79. In July 10th, 2012 The Disability Evaluation and Report Is Done On The Plaintiff By MetLife's Own IME Dr. Schumacher. This Doctor Claimed MetLife Provided Him All The Plaintiff's Medical Records From All The

Attending Physicians To Conduct This Evaluation. It Was However Discovered That MetLife Had Intentionally WITHELD-ALL-MEDICAL-RECORDS From Bobbie Shepard, Dr. Gray, Dr. Goldfinger and Various Others From The Plaintiff's Evaluation As Shown By The Actual Evaluation Report! These Missing Medical Records From Dr. Gray For The Plaintiff Were First Furnished To Dr. Schumacher On **August 20th, 2012,** (Well After The Final Evaluation Report Had Been Filed.), In Which A Message In The MetLife Record States That Dr. Schumacher FIRST-THEN Received By FAX From MetLife 58-Pages Of The Plaintiff's Medical Records From A Dr. Gray (Which MetLife Had In Their Possession Since **January 2012** Per Beth Green's Own Statement Dated **June 25th, 2012**)!

80. In July 10th, 2012, On Dr. Schumacher's IME Disability Evaluation Of The Plaintiff, On Page-3, The Second Last Paragraph, Dr. Schumacher States He Understands The Plaintiff Had Been TERMINATED From Work At Raytheon Where The Plaintiff States He Was Actually Placed On Medical Leave and NOT-TERMINATED From Work! This Lead To Some Confusion For Dr. Schumacher As He Insisted That Raytheon and MetLife Informed Him The Plaintiff Was Already TERMINATED-From-Employment and He Wondered Why He Was Being Asked To Evaluate A TERMINATED-EMPLOYEE!

81. In July 26th, 2012 There Is A Message In The MetLife Record That States; "*EE was referred to cardiology by immunologist Dr. Gray from whom we have NOT*

*received ov notes*!" The MetLife Record Shows This To Be Another FALSE Statement As It Shows Dr. Gray's Reports Were SCANNED-IN To The Administrative Record By MetLife On **May 29th, 2012** and Dr. Goldfinger's Medical Records Were Received On **July 3rd, 2012** As Stated In The MetLife Administrative Transaction Report On Page 110! (This Report Is On Page 96 Of The Administrative Transaction Record!)

82. In August 2nd, 2012 The MetLife Record Shows They Took A Copy Of Dr. Gray's Partial FIRST-SET Of Medical Records, (That Were Initially-Scanned Into The Record On **May 29th, 2012**), Then RE-SCANNED Them With The Other Missing Records From Dr. Gray Into The Plaintiff's MetLife Record! This Second Set Of Dr. Gray's Medical Records Were Then First Provided To MetLife's Own IME Dr. Schumacher On **August 20th, 2012,** Well After The Disability Evaluation Had Already Been Filed!

83. In August 6th, 2012 There Is A Message In The MetLife Record That States MetLife's Own Walter Tomasik Read and Discussed The Plaintiff's Medical Records From Dr. Gray Regarding The Still Elevated Antibodies Indicating Systemic Inflammatory Response Syndrome! (This Report Is On Page 85 Of The Administrative Transaction Record!)

84. In August 16th, 2012 There Is A Message In The MetLife Record That States The Plaintiff Sent An E-Mail To Their RRN On **8-7-2012** Where He Is Requesting Various Medical Documentation Including Medical Records From

Raytheon Medical and Records From Raytheon Human Resources! MetLife States They Are <u>REJECTING The Request</u> Due To The Claim-Being-Active and "***NO-REQUIREMENT Under ERISA To Do So***"! It Is Notarized By One Called "***F. Anderson***"! These Records and Evaluations That Were Performed, (<u>Which Were Concealed From The Plaintiff</u>), Were Found To Be Missing From The Administrative Record Where MetLife and Raytheon Claimed They Would NEVER Allow Access To These Documents! (<u>This Report Is On Page 78 Of The Administrative Transaction Record!</u>)

85. In August 17th, 2012 The Plaintiff Had His First Doctor's Appointment With Dr. Atul P. Lilani In Endocrinology Which Was Located In Scottsdale Arizona.

86. In August 18th, 2012 The Plaintiff Mailed Out Letters For The SECOND-TIME To Beth Green At MetLife Along With A Dr. Karen Haas and Veronica Thomas At Raytheon REQUESTING-THE-ENTIRE MetLife Or Raytheon Insurance Plan/Policy For His Disability Coverage!

87. In August 20th, 2012 There Is A Message Where The MetLife Record States That <u>Dr. Schumacher FIRST-NOW Received By FAX</u> From MetLife <u>58-Pages</u> Of The Plaintiff's Medical Records From A Dr. Gray (<u>Which MetLife Had In Their Possession Since **January 2012**, Per Beth Green's Own **June 25th, 2012** Statement, and Was Scanned Into The Record On **May 29th, 2012**</u>)! Dr. Schumacher Then States In His Report; "***The Records Failed To Add Anything To His Understanding Of The Pathological Process In Mr. Jozwiak's Case***"!

(What Should Also Be Noted Is That **NOWHERE** Is It Documented By Dr. Schumacher, MetLife, Raytheon Or Any Other, That They Contacted Dr. Gray Or Any Of The Plaintiff's Attending Physicians To **DISCUSS** The Medical Reports Or Attempt To **UNDERSTAND** These Results!)

88. In September 25th, 2012 There Is A Message In The MetLife Record That States; "*I also faxed separately a letter to Dr Bacon asking him to review reports. I asked if he was aware of the amount of narcotic meds used and if he ever noted any impairment related to the use of the narcotic meds. I asked him for any comments. Debbie McAloon, RRN.*" This Report Is Due To The Discovery By Other Doctors and Evaluators That Dr. Bacon and Dr. Haas Were **Intentionally, Illegally-And-Steadily-Increasing** The Level Of **Opioid Pain Medication** That **Dr. Bacon Was Handing Out To The Plaintiff** From **His-Office-Samples**! This Was Due To The Plaintiff's Increasing Level Of Pain From Broken Surgical Staples and/or Sutures Migrating Around Within The Body Cavity Causing Organ Distress and Infections Before One Occasionally Forced Its Way Out Of The Body As Noted By Dr. Bacon and Dr. Tsai On May 27th, 2011, June 13th, 2011 and October 19th, 2012. (This Report Is On Page 61 Of The Administrative Transaction Record!)

89. In October 1st, 2012 There Is A Message In The MetLife Record That States; "*Voicemail received. I said that I was returning his call and that per policy, we are NOT allowed to complete his request. He will have to ask his doctors.*

*Debbie McAloon, RRN.*" This Is Another REJECTION To The Plaintiff's

Request For The Medical Evaluations And The Plan/Policy That Was Required

To Be Supplied Within <u>90-Days</u> Of Going On Disability Per ERISA Law! (<u>This</u>

<u>Report Is On Page 58 Of The Administrative Transaction Record!</u>)

90. In October 1st, 2012 There Is A Message In The MetLife Record That States

There Was A Phone Call From A Debbie At MetLife (<u>PH: 888-482-5246, Ext:</u>

<u>2391</u>) To Carrie Braschler At Dr. Bacon's Office Where MetLife Claims The

Plaintiff Had Called Them and Informed Them Dr. Bacon Was NO-Longer His

Physician! An Amanda Bowman-Wann At Dr. Bacon's Office Immediately

Called The Plaintiff To Ask If This Statement From MetLife Was True In

Which The Plaintiff Informed Them It Was NOT! This Is Actually The <u>FIRST-</u>

<u>OF-THREE</u> Such Calls By MetLife To Dr. Bacon Claiming The Very Same

Thing In Which All Were Discovered To Be FALSE Statements By MetLife.

(<u>The Plaintiff Has Supplied A Copy Of This Phone Record From Dr. Bacon's</u>

<u>Office For The Court To Enter As Relevant Evidence Into The Record</u>.)

91. In October 12th, 2012 The Plaintiff Obtains An X-Ray Diagnostic Report Done

On **October 11th, 2012** Where A Dr. Richard R. Boyle Jr. Diagnosed; "*Mild*

*elevation of the left hemi diaphragm and linear atelectatic changes at the left*

*base.*" Also; "*Heart size is at upper limits of normal!*" Beth Green At MetLife

Orders The Plaintiff To Immediately FAX This Report To Her In Which The

Plaintiff Complied!

92. In October 19th, 2012 There Is A Message In The MetLife Record That States; *"Suture coming out of left side!"* This Would Be From Dr. Bacon's, Dr. Tsai's and Now A Dr. Margaret Kessler's Medical Report On The Plaintiff! There Is Also A Notice In The Record That; *"Dr. states __they cannot determine contagious__ unkn as to slow healing and extended time for healing."* This Is Due To The Plaintiff Suffering From Broken Surgical Staples and/or Sutures Migrating Around Within The Body Cavity Causing Organ Distress and Infections Before One Occasionally Forced Its Way Out Through The Body! (This Report Is On Page 48 and 49 Of The Administrative Transaction Record!)

93. In __November 26th, 2012__ MetLife Sent The Plaintiff A Letter Claiming They Were Immediately TERMINATING All Benefits Due To Their Medical Evaluations Now Claiming The Medical Diagnosis Done By Their Medical Professionals NO-Longer-Supported **ANY-FORM** Of Disability! The Plaintiff Called Dr. Karen Haas At Raytheon Medical To Discuss This Letter and Was Immediately Informed That MetLife and Raytheon Were Immediately TERMINATING His __Benefits and Employment__ As They Were Entitled To Do This Under The Claim Of An *"ADMINISTRATIVE-TERMINATION"* and Due To Arizona Being An *"AT-WILL-WORK-STATE"*! When The Plaintiff Asked Who He Should Speak To About Appealing This Adverse Decision, __She-Became-Threatening__ and Her Response Was; *"You Are NOT Allowed To Appeal This Decision, Or Have A Review Since As Of Now, You Are NO-*

*Longer-An-Employee Of Raytheon*."!

94. In November 29th, 2012 MetLife Sent The Plaintiff A Letter Informing Him They Just Received <u>A Group-Life-Insurance-Claim</u> On His Behalf Due To His Reported Absence From Work! The Question To Ask <u>Is HOW Can One Be ABSENT From Work</u> When The Employer Had <u>ILLEGALLY-TERMINATED</u> One's Employment and <u>Intentionally-Blocked</u> All Access To The Employer's Site?? (<u>See The Copy Of The Actual MetLife Letter Enclosed For The Court To Enter As Relevant Evidence Into The Record Showing Fraud and Pre-Determined Wrongful TERMINATION Of Benefits and Employment.</u>)

95. In <u>**December 4th, 2012**</u> Raytheon Sent The Plaintiff A **LETTER-OF-TERMINATION** Where They State; "***After 24 months, employment is terminated, <u>even if employees are still receiving disability benefits</u>. Our records indicate that your <u>24- month leave of absence</u> will end on 02/28/2013, and your <u>employment will be administratively terminated</u> as of that date***." When The Plaintiff Attempted To Call Raytheon Human Resources, Raytheon Medical, Raytheon Benefits Or Any Other Department, His Calls Would Either Go Directly Into Their Voice-Mail, Or Were Immediately Blocked! (<u>The Plaintiff Has Supplied A Copy Of The Actual Raytheon Letter For The Court To Enter As Relevant Evidence Into The Record Showing Fraud and Pre-Determined Wrongful TERMINATION Of Benefits and Employment!</u>)

96. In December 5th, 2012 The Plaintiff Called MetLife Asking About The Letter

Dated **November 29th, 2012** He Received From Them Where It States There Was <u>A Life-Insurance-Claim</u> Made Against Him! (<u>This Report Is On Page 38 Of The Administrative Transaction Record!</u>)

97. In December 10th, 2012 MetLife Issued A CLAIM-ALERT To The Plaintiff's File Stating; ***"Verify SS Status prior to any LTD Reinstatement and Refer to SSS."*** (<u>This Report Is On Page 38 Of The Administrative Transaction Record!</u>)

98. In December 14th, 2012 Dr. Bacon Performs A <u>Much-Overdue-Lab-Test</u> Due To The Plaintiff Still Having A <u>Chronic-Cough</u> Since **January 2009** and Discovers The Plaintiff Also Has A Systemic Candida Albicans Infection Of The Lungs, Throat and Possibly The Organs!

99. In December 21st, 2012 The Plaintiff Had His FIRST Cardio Stress Test Scheduled By MetLife At Cardiovascular Consultants In Phoenix Arizona. This Appointment Was Due To MetLife and Raytheon Rejecting Dr. Goldfinger's and Others Earlier Evaluations!

100.   In December 26th, 2012 The Plaintiff Had A SECOND Cardio Stress Test At Cardiovascular Consultants, LTD In Phoenix Arizona. This Appointment Was Due To The Plaintiff Being Unable To Perform The First-Stress-Test Due To Respiratory and Other Medical Issues. This Doctor Now Does The Medically Induced Stress Test With The Aid Of A CT-Scanner. The Doctor Informs The Plaintiff Of The Appearance Of An Enlarged Heart, Possible Aortic Aneurism At The Branch and Paralyzed Left Lung With Erosive Damage To Both Lungs.

**101.** In December 26th, 2012 MetLife Sent A Letter To The Plaintiff Informing Him They Were Denying Long Term Disability Benefits Due To <u>A **COMPLETE** and **FAIR** Review Of **ALL** His Medical Records</u>! This Is A FRADULENT Statement Due To MetLife <u>Intentionally-NOT-Contacting</u> The Treating Doctors In Which The Plaintiff Also Discovered Their Actions Of <u>Intentionally-Withholding-Medical-Records</u> From Multiple Evaluations While Providing FALSE and FRADULENT Claims To Others!

**102.** In December 29th, 2012 There Is A Message In The MetLife Record That States; "*<u>PRF conducted 9/11/12</u> notes <u>**NO medical documentation**</u> to support functional limitations. <u>File terminated 11/18/12</u> and letter sent to ee. EE faxed <u>appeal request dated 1/22/13</u>* (How Did MetLife Get A **1/22/13** <u>Date Code, For A Document With A **Scan-In-Date** To The Record Dated **12/29/12**</u>?) *with a copy of recent labs and noted he is mailing a document package including hospital reports and labs. Spietruch*" This Illegal Act By MetLife and Raytheon Shows That <u>Neither Of Them Ever Intended To Allow A Full and Fair Review Of The Plaintiff's Claim</u> Under The Requirements of ERISA Since They Were TERMINATING His Claims File On **11/18/12**! (<u>This Report Is On Page 36 and Page 37 Of The Administrative Transaction Record</u>!)

**103.** In January 5th, 2013 The Plaintiff Was Hospitalized For <u>9-Days</u> At Tempe St. Luke's Hospital In Arizona For A <u>Confirmed Case Of Systemic Candida Albicans Respiratory Infection</u> Requiring IV Treatment And Then <u>3-Months</u> Of

A Breathing Nebulizer. The Doctors At That Time Also Discovered An Unknown Significant Blood Contamination In All The Blood Samples Drawn From The Plaintiff By The Doctors and Lab Personnel.

**104.**   In **January 18<u>th</u>, 2013** There Is A Message In The MetLife Record That States They Received A Voicemail From Mary Richardson At Raytheon Medical Where She Had A Conversation With The Plaintiff and She Discussed It With Dr. Haas. This Was Due To The Plaintiff Recently Providing Medical Updates To The Raytheon Medical Staff, (<u>As Ordered By MetLife</u>), His Requesting The *"ENTIRE MetLife Administrative Record"*, His Being Told He Was *"NOT-ALLOWED-TO-APPEAL"* The Decision To TERMINATE His Benefits, Was *"NOT-ALLOWED-TO-HAVE-A-REVIEW"* Of The Claim Due To His *"NO-LONGER-BEING-AN-EMPLOYEE"* Of Raytheon and Due To A Doctor At The University Medical Center Telling The Plaintiff That Raytheon and MetLife Had Called In The Past Ordering Them and Others To **NOT-DIAGNOSE** and/or **TREAT** The Plaintiff! (<u>This Report Is On Page 38 Of The Administrative Transaction Record!</u>)

**105.**   In January 22<u>nd</u>, 2013 The Plaintiff Sent A Letter To MetLife Appealing Their Decision To TERMINATE and Refuse All Disability Benefits!

**106.**   In January 31<u>st</u>, 2013, The Plaintiff Discovered MetLife and Raytheon Had Now Blocked Almost All His Communications and E-Mails! This Was Due To The Plaintiff's Recent Medical Diagnosis, and The Discovery That MetLife,

Raytheon With Others Had Been Calling The Plaintiff's Treating Physicians To Block All Medical Diagnosis and/or Treatment Of The Confirmed Infections! (See The Supplied Raytheon E-Mail To Mary Richardson Dated **January 31st, 2013** For Relevant Evidence To Be Entered Into The Court Record.)

**107.**   In February 1st, 2013, The LAST Fit-For-Duty-Review That Raytheon Had Scheduled In Early **January 2013** Was Canceled At The Last Minute Due To Their Claiming A Conflict Of Schedule! Raytheon Medical Personnel Claimed They Would Reschedule The Review Within A Week and Took The Most Recent Medical Records From The Plaintiff Including Those From Tempe St. Luke's! This Review Is NEVER Rescheduled and Raytheon Continued To Refuse All Further Communication(s) With The Plaintiff!

**108.**   In February 1st, 2013 at 8:54:56 AM, MetLife Printed A Shipping Label To Send A Package To The Plaintiff At His Tucson Arizona Address. (Tracking NO: 4204 0512 9405 5102 0082 8647 7479 13) The Plaintiff NEVER Received Such A Package So He Had The USPS and Other Authorities Do A Full-Search Of This Label's Bar-Code. What Was Discovered Is This Label Was Created By MetLife, Then Scanned As A Page Into The Administrative Record, However The Investigation Discovered This Bar-Code Was **NEVER-SCANNED** Into Any-Postal-Or-Package-System and Appears To Have **NEVER-BEEN-SENT!** (The Plaintiff Has Provided To The Court A Copy Of This Report To Be Entered Into The Record As Relevant Evidence.)

**109.**   In February 15th, 2013 A Pulmonologist In Scottsdale Arizona Named Dr. Beaty Received A Number Of Phone Calls From A Dr. Altman and Dr. Schaller For MetLife, A Dr. Haas At Raytheon and A Dr. Bacon In Tucson Who All Ordered Him To STOP All Medical Tests and Treatment On The Plaintiff! The Plaintiff, Who Discovered These Calls To Dr. Beaty, Found These Doctors Had **FALSELY** Claimed To Dr. Beaty They Had Determined The Plaintiff's Health Problems Were Self-Induced In Order To Get This Doctor To **REFUSE** All Medical Care! (The Plaintiff Is Prepared To Supply A Medical Record With Medical Lab Tests As Relevant Evidence Documenting This Criminal Action By Dr. Bacon, Dr. Schaller and Others!)

**110.**   In February 27th, 2013 There Is A Message In The MetLife Record That States That The Scar Tissue On The L-Side Nerves Was Confirmed! (This Report Is On Page 24 Of The Administrative Transaction Record!)

**111.**   In March 8th, 2013 There Is A Message In The MetLife Record That States A Dr. Schaller For MetLife; "*Was provided with 643 pages of Medical Records and was asked to perform a peer review!*" Dr. Schaller Then States In His Document; "***The specific dates of interest (In The Medical Records) are relative to those beyond November 19, 2012!***" Restricting The Records Reviewed For An Appeal To Those Beyond **November 19th, 2012** Effectively and Illegally Eliminated All Medical Records From Bobbie Shepard, Dr. Gray, Dr. Goldfinger and Others Therefore Eliminating All Records Confirming A

Disability! <u>(The Question Is Where Are The 643-Pages Of Medical Records They Speak Of and From Which Doctors Are They From As They Were NOT Discovered Within The Administrative Record That MetLife Provided To The Plaintiff Or Attorney Who Ever Tried To Obtain These Records In The Past?)</u>

**112.** For The Review Done By <u>Dr. John L. Schaller</u> On **March 8th, 2013** Through **March 15th, 2013**, One Needs To Enter Into The Court Record A Number Of Relevant <u>CRITICAL-DOCUMENTS</u> That Were Discovered After **August 2016** Regarding Dr. Schaller and His Practice Of Being A Medical Consultant. The Items That MUST-BE Brought To Light For The Court To Understand The Situation Surrounding His Medical Evaluation Of The Claimant's/Plaintiff's Medical Records Are As Follows:

a) Dr. Schaller Lists His <u>Employment Address</u> For Consulting, On The Plaintiff's Medical Evaluation Dated **March 15th, 2013**, As **Medical Consultants Network, LLC** Which Is Located At **901 Boren Ave., Suite 1400, Seattle WA 98104-3529**.

b) Dr. Schaller Also Lists His <u>Medical License Number</u> On The Plaintiff's Medical Evaluation As Being **MD17949** Which Was Also Listed As Being For Washington State.

   <u>**UPON-FURTHER-INVESTIGATION-IT-WAS-DISCOVERED-THAT:**</u>

c) Dr. Schaller's Medical License Was **NOT-VALID** For The State Of Washington As Their License Numbers Consist Of **8-Numbers** and Dr. Schaller's Consists Of Only **5-Numbers** Preceded By **MD** For A Doctor!

d) Dr. Schaller's <u>Medical License Number</u> Was Found To Actually Be From The State Of Arizona!

e) Dr. Schaller Was One Of The Operators Of A Company Named **Schaller Anderson** Which Managed Health Care For **9-States** Of Which Washington State Was **NOT-ONE** Of The States!

f) **Aetna** Purchased **Schaller Anderson** In **November 19th, 2003** Where It Then Became Based Out Of Phoenix Arizona and Was Listed As Providing Medicaid Plans and Services Throughout The Nation!

g) An Investigation By A Nicholas Morris, From The Washington State Medical Commission, Was Unable To Locate Any Medical License As Ever Belonging To A Dr. Schaller In Their State's Legacy Database!

h) Under The Washington State Laws, For A Medical Provider To Be Allowed To Practice Medicine and/or Do Consulting Work In Their State They Are **REQUIRED-TO-BE-LICENSED** For That State and Since They Were NOT, They Violated Washington Statutes **RCW 18.71.021, RCW 18.71.030** and **ERISA Law**!

113.   In March 8th, 2013 There Is A Message In The MetLife Record That States; *"On February 20th, 2012, Paul tried to resume work but work still refused to allow a return to work based on undiagnosed health issues and medical restrictions and issues regarding chemicals and cleaners causing skin and respiratory issues!"* (This Shows Coercive Interference and Illegal Forced TERMINATION Of Benefits and Employment Against A Claimant/Plaintiff.)

114.   In March 11th, 2013 There Is A Message In The MetLife Record That States; *"Dr. Altman contacts Dr. Beaty who is a pulmonologist in Scottsdale Arizona for a secret phone call. Dr. Altman states in the MetLife file that he will be calling Dr. Beaty back on March 18th, 2013 for further discussions!"* This

Action Of Having SECRET Phone Calls With Doctors Was ILLEGAL and First Discovered By The Plaintiff After **September 9th, 2014** In The Administrative Record.

**115.** In March 15th, 2013 There Is A Message in The MetLife Record By MetLife's Own Dr. John L. Schaller Stating; *"Paul has been Positively diagnosed with Candida Infection, Chronic Cough with Skin Blisters and Lesions! This letter is in thanks for MetLife allowing him to perform a Medical evaluation on the Patient named Paul Jozwiak in which his Medical evaluation was to follow."* It Was Discovered By The Plaintiff This Evaluation Had A Number Of FALSE Claims In It Where Dr. Schaller NEVER Made Any Attempt To Have A Consultation With Dr. Gray, Dr. Goldfinger, Bobbie Shepard Or Other Physicians Who Were Treating The Plaintiff At That Time!!

**116.** In March 15th, 2013 There Is A Message In The MetLife Record That States; *"Dr. Schaller calls Dr. Bacon to have <u>a secret conversation</u> regarding the disability evaluation and medical lab tests on Paul Jozwiak!"*

**117.** In April 1st, 2013 There Is A Message Stating That Dr. Bacon **<u>Completely-Changed His Previous Medical Evaluations and Opinions</u>** For The Plaintiff From NO-MORE-EXPOSURES To Chemicals, Gasses and Toxins and A Work Week Restricted To <u>40-Hours</u> To That being **NO Work Restrictions and NO Disability** Per Dr. Schaller's Medical Report! (<u>This Is Now A Documented Willful Act Of Medical, ERISA and Insurance Fraud With</u>

Endangerment Of Health and Safety Being Committed By Dr. Bacon, MetLife,

Raytheon and Others For The Purpose Of Denying Rightful ERISA Benefits!)

118.   In **March 19th, 2013** Through **April 2nd, 2013** There Are Entries In The

MetLife Administrative Record's Transaction Report By a Michael T. McPeak

Listed As A Clinical Psychologist For MetLife. These Entries Claim This

Psychologist Called The Plaintiff's Cell Phone At (520)-818-4976 and Did An

Evaluation On The Plaintiff. The Problem Is The Plaintiff NEVER Had Contact

With This Person During The **2013, 2014** Or Later Years and Therefore These

Entries Are FRADULENT! The Plaintiff Has Supplied To The Court As

Relevant Evidence To Be Entered Into The Record A Copy Of The AT&T

Phone Transaction Record For The Time Period In Question Proving These

Phone Calls To (520)-818-4976 and Their-Minutes NEVER Occurred! (These

Reports Are Located On Page 7 Through Page 16 Of The Administrative

Transaction Record!)

119.   In **April 5th, 2013** There Is A Message In The MetLife Record Stating That

The Plaintiff Had Put In A; *"Request Entire File. Srowland css!"* Due To His

Most Recent Phone Call In Which The Request Was Actually DENIED! (This

Report Is On Page 3 Of The Administrative Transaction Record!)

120.   In April 5th, 2013 There Is A Message In The MetLife Record Stating That

MetLife Will Now Make A; *"Copy of His Entire File. Srowland css!"* For The

Plaintiff! **NOTE:** The Portion Of The Administrative Record Called *"Diary*

60

*Entries*" Is Actually The "***Administrative Transaction Record***"! (This Report Is On Page 1 Of The Administrative Transaction Record!)

121.   In **April 8ᵗʰ, 2013** There Is A Message In The MetLife Record Stating That MetLife Will Now; "***Please print Entire File, including all diary entries, and all documents on XCS, ICM and DPA. F. Anderson (x6207)***!" For The Plaintiff! Notice How MetLife NEVER Actually Printed The **ENTIRE Administrative Record** Due To How **Much Of It Is Still Missing** and The Entries Within The Transaction Record Listing Some Of The Missing Records! (This Report Is On Located on Page 1 Of The Administrative Transaction Record!)

122.   In **April 8ᵗʰ, 2013** MetLife ENDED The Administrative Transaction Record Entries For The Plaintiff and NO Other Portions Of The Record Other Than Letters Were Supplied With Any Date After That! This Activity Indicates That Neither MetLife Nor Raytheon Ever Intended To Allow A Full and Fair Review Of The Claim and They Had A Pre-Determined Plan To Deny The Claim NO-Matter What Evidence Supported A Disability! One Must Now Realize That Due To MetLife's and Raytheon's Own **June 21ˢᵗ, 2012** Response In The Administrative Record Stating; "***Restrictions for a 40 hour week, and NO exposures to noxious substances could be met***." That Fit The Medical Restrictions Set Forth By Dr. Bacon, and The Return To Work Being Rejected Due To Unresolved Chronic Infections and/or Lingering Health Problems,

What MetLife and Raytheon Actually Did Was Document <u>The Plaintiff Had A</u> <u>Health Problem So Severe</u> They Were Actually Listing Him As **NOT-PHYSICALLY-ABLE** To Be Working At Raytheon and Therefore Anywhere Else! (<u>This Means The Plaintiff Was Being Declared As **FULLY-DISABLED**</u> <u>Due To Being **UNABLE** To Perform **ANY-JOB** Due To Lingering and</u> <u>Unresolved System Wide Infections, Etc. Preventing Him From Having Or</u> <u>Holding **ANY-JOB** Including **THE-OFFICE-JOB-HE-HAD** At Raytheon</u>!)

123.   In April 8th, 2013, at 9:48:00 AM, MetLife Created A Shipping Label To Send A Package To The Plaintiff At His Tucson Arizona Address. (<u>Tracking</u> <u>NO: 7010 3090 0001 3373 9112</u>) The Plaintiff NEVER Received Such A Package So He Had The USPS and Other Authorities Do A Full-Search Of This Label's Bar-Code. What Was Discovered Is This Label Was Printed By MetLife, Scanned As A Page Into The Administrative Record As Proof They Sent The Plaintiff A Package Of Documents, However The Investigation Discovered This Bar-Code Was **NEVER-SCANNED** Into Any-Postal-Or-Package-System and Appears To Have **NEVER-BEEN-SENT**! (<u>The Plaintiff</u> <u>Has Provided To The Court A Copy Of This Report To Be Entered Into The</u> <u>Record As Relevant Evidence</u>.)

124.   In **<u>April 10th, 2013</u>** The Plaintiff AGAIN Requested By Letter The **<u>ENTIRE</u>** **<u>Administrative Record</u>** From MetLife Which They Had Refused To Provide On **January 18th, 2013** and **April 5th, 2013**.

**125.**   In April 17th, 2013 MetLife Filed A FRADULENT-LETTER Within The Administrative Record Claiming They Had Already Sent The Insurance Administrative Record The Plaintiff Requested On **April 5th, 2013**! The Administrative Record However Shows This File Was FIRST-PRINTED On **April 8th, 2013**, Which Was Just Before The **May 4th, 2013** Final-Denial! The Plaintiff Then Received A FINAL-DENIAL-LETTER Dated **June 7th, 2013**, Where The Actual FEDEX-LABEL Being Part Of The Administrative Record Shows The <u>File's First Fragment</u> Was Shipped on **July 11th, 2013** and The Package Consisting Of An <u>18.00 By 12.50 By 3.50 Inch</u> Box Only Weighing <u>1.0 Lb</u> Was Then Sent!

**126.**   In June 7th, 2013 MetLife Sent The Plaintiff ANOTHER Letter Denying Long Term Disability Benefits!

**127.**   In **<u>June 12th, 2013</u>** The Plaintiff AGAIN Requested By Letter The **<u>ENTIRE</u> <u>Administrative Record</u>** From MetLife Which They had Refused To provide On **January 18th, 2013, April 5th, 2013** and **April 10th, 2013**!

**128.**   In June 13th, 2013 The Plaintiff's Doctor Named Dr. Gray In Benson Arizona Received Their FIRST-AND-ONLY Medical Records Request For The Plaintiffs Records Which Were Sent Immediately By Fax and Also By A Mailed In CD To MetLife Which Was Received On **June 18th, 2013**!

**129.**   In July 11th, 2013 MetLife Sent A Letter To The Plaintiff Where They Claim; "*As noted above, a complete copy of all of the <u>Relevant Documents</u>*

*from your Claim File was sent to you on April 17th, 2013*!" What This Letter Actually Means Is That MetLife Was ONLY Sending-Small-Pieces Of The Administrative Record To The Plaintiff and **NOT-THE-ENTIRE-RECORD**. (One Must Also Note The First Order To PRINT-THE-RECORD Occurred On **April 8th, 2013** While The First Valid Shipping Label Used To Ship This Record In VERY-SMALL-PIECES Was Printed On **July 11th, 2013!**)

130.    In **July 11th, 2013** MetLife Now FIRST Prints A FEDEX-LABEL For Shipping The Administrative Record To The Plaintiff (Tracking NO: 7962-0622-0783)! The Actual Box Size Is 18.00 By 12.50 By 3.50 Inches and Only Weighs 1.0 Lb. (Approximately 100-Pages) Making This Package MUCH-TOO-LIGHT Due To It Being Filled With **80% Bubble Wrap**! Considering The MetLife Administrative Record Transaction Report Itself Is Comprised Of 314-Pages, While A Report In The Record States A Dr. Schaller For MetLife Was Provided With 643-Pages Of The Plaintiff's Medical Records For Review, (Which Are Obviously-Missing From This Administrative Record), With The Evaluations, Various Documents and NOT Taking Into Account The Weight Of The Box and Packaging Materials, This Shows MetLife Intentionally Withheld Over **50%** Of The Record From The Plaintiff To Deny His Benefits Claim! MetLife Shipped Very Small Fragments Of The Administrative Record To The Plaintiff Starting In **July 11th, 2013** Where The Last Part Arrived In **May 2014**!

131.    In July 12th, 2013 The Plaintiff Being Represented By The Binder-And-

Binder Law Firm Went Before A Judge In Tucson Arizona and After A Careful Review Of The Evidence, Arizona Social Security Determined The Plaintiff Was FULLY-DISABLED Due To The Medical Records Provided At The Hearing That Had Been Previously Withheld From Them By Dr. Bacon, MetLife, Raytheon and Others! (<u>MetLife Who Was Informed Of This SSI Award Claimed This Still Didn't Change Anything Regarding Benefits</u>!)

**132.** In <u>**September 25th, 2013**</u> The Plaintiff Sent An E-Mail To Beth Green and Susan Campany At MetLife Along With A Janet Baer, Karen Haas, Mary Richardson and A Rachel Jimenez At Raytheon Requesting The MetLife Or Raytheon Plan/Policy. This Was Requested By Multiple Letters and/or Phone Calls Starting Back In **March 2011** and To Date None Of These People Had Supplied The Plan/Policy While Claiming; *"They NEVER Received Any Request For This Material."* and/or; *"It's NOT Their Job."* and/or; *"It Got Lost In The Mail*!*"*

**133.** In <u>**September 30th, 2013**</u> Raytheon Now FIRST Sends The Plaintiff The Actual MetLife and/or Raytheon Disability Plan/Policy By E-Mail He Has Been Requesting Ever Since **March 2011**! The Plaintiff Has Supplied To The Court As Relevant Evidence To Be Entered Into The Record A Copy Of The E-Mail Response That Held The Plan/Policy Where A *"**Kathryn K. Rowen**"* At Raytheon Who Sent The Documents Claims *"**While I am <u>NOT aware of you requesting these previously</u>, the documents are nevertheless attached here.**"*

**134.**   In November 8th, 2013 The Plaintiff Obtained A Letter From Dr. Lilani's Medical Establishment In Scottsdale Arizona Showing That MetLife NEVER Contacted Him Nor Requested Medical Records For The Plaintiff From Him! (The Plaintiff Has Included A Copy Of The Letter To Be Entered Into The Official Court Record As Relevant Evidence.)

**135.**   In November 13th, 2013 The Plaintiff Obtained A Letter From Dr. Gray's Medical Establishment In Benson Arizona Showing The FIRST-AND-ONLY-TIME That MetLife Requested Medical Records For The Plaintiff From Him Was On **June 13th, 2013** and NEVER Any Time Prior To Or After That! (The Plaintiff Has Included A Copy Of The Letter To Be Entered Into The Official Court Record As Relevant Evidence.)

**136.**   In December 9th, 2013 The Plaintiff Obtained A Letter From The Cardiovascular Consultants Medical Establishment In Phoenix Arizona Showing That MetLife NEVER Contacted Them Nor Requested Medical Records For The Plaintiff From Them! (The Plaintiff Has Included A Copy Of The Letter To Be Entered Into The Official Court Record As Relevant Evidence.)

**137.**   In **January 11th, 2014** The Plaintiff Sent The FIRST Letter To MetLife Requesting They Provide A List Of All Doctor's Names, Contact Information With Their Complete and Unaltered Medical Evaluations They Performed On Him When They Denied His Claim For Long Term Disability Benefits.

**138.** In February 5th, 2014 MetLife Sent The Plaintiff A Letter Where They Claim They Provide Certain Administrative and Claim Services To The Plan Which Is "***Self-Funded and Administered By Raytheon***"! They Also Claimed They Were "***NOT Subject To State Insurance Laws and Regulations Under Section 515 Of ERISA***"! MetLife Then Went On To Claim They Had Already Responded To The Plaintiff's **January 11th, 2014** Request Which <u>They Actually Did NOT</u>!

**139.** In **March 22nd, 2014** The Plaintiff Sent A SECOND Letter To MetLife Requesting They Provide A List Of All Doctor's Names, Contact Information With Their Complete and Unaltered Medical Evaluations They Performed On Him When They Denied His Claim For Long Term Disability Benefits.

**140.** In **May 8th, 2014** The Plaintiff Received The LAST-FRAGMENT Of The MetLife <u>Administrative Claims Record</u> In Which It Was Discovered That <u>Most Of The Record Was Either **MISSING, Or INTENTIONALLY-WITHELD**</u>!!

**141.** In May 8th, 2014 The Plaintiff Was Reviewing The MetLife Administrative Record and <u>Discovered That Most and/or All Of The Medical Reports For Dr. Bacon and Others Were Missing From The Record</u>. The Plaintiff Immediately Began Obtaining Copies Of The Medical Records From Dr. Bacon and Others, <u>He Knew Of,</u> To Continue His Review Of The MetLife Administrative Record To Determine Why These Medical Records, (<u>Which He Knew and Could Prove</u>), Were Supplied To MetLife and Raytheon, Were MISSING!

**142.**   In May 16th, 2014 The Plaintiff Was Placed Into Isolation At St. Joseph's Hospital In Tucson Arizona For Another Positive Tuberculosis Reading From His Blood and Sputum. This Is Now The 9th Time The Plaintiff Had This TB Positive Reading and This Time He Is Hospitalized For 9-Days In Which The Reading Disappears Again. It Was Discovered The Medical Professionals, MetLife Along With Raytheon Had Discovered In **June 2011** The Possible Reason For These Readings. It Was Discovered and Documented Within The Medical Records To MetLife and Raytheon That This Reoccurring Problem Could Be Due To A RARE Mycobacterium Avium Complex (MAC)!

**143.**   In **June 3rd, 2014** The Plaintiff Now Receives The FIRST-FRAGMENT Of The MetLife Administrative Claims Record Transaction Record! MetLife Shipped This Transaction Record To The Claimant/Plaintiff In VERY-SMALL-PIECES In Which The Last Fragment Arrived In **March 2015**!

**144.**   In **September 9th, 2014** The Plaintiff Received Enough Replacement Copies Of His Medical Records From Dr. Bacon, St. Joseph's Hospital and Various Other Medical Providers To Continue His Review Of The MetLife Record.

**145.**   In **March 22nd, 2015** The Plaintiff Discovered While Reviewing The MetLife Administrative Record's Transaction Reports That Beth Green and Others At MetLife Were Falsifying-Reports From **August 15th, 2011** Through **April 8th, 2013**! This Is Due To Beth and Others Continually Reporting They Were Asking and/or Waiting For The Plaintiff To Provide Contact Information

and/or Medical Reports for Dr. Gray and Other Doctors When The Record Showed They Had The Information All Along! These Actions With Intentionally Withholding Medical Records From A Review, Providing FALSE Statements About The Plaintiff To Others, Interference With Doctors To Prevent Diagnosis and/or Treatment Of Confirmed Medical Infections With Other Criminal Activities Was Found Within The Transaction Record!

146.   In April 17th, 2015 The Plaintiff Suffered From A Pocket Of Infection Half The Size Of A Golf-Ball Forcing Its Way Out From The Body Cavity By Rupturing The Old Colostomy Scar. This Required Surgery To Be Done At The Surgical Associates Of Wausau Wisconsin In Order To Remove Infected, Dead and Dying Tissue, An Abscess and/or Cyst Along With Broken Suture and Surgical Materials From The Open Wound.

147.   In **September 8th, 2015** The Plaintiff Sent a THIRD Letter To MetLife Requesting They Provide A List Of All Doctor's Names, Contact Information With Their Complete and Unaltered Medical Evaluations They Performed On Him When They Denied His Claim For Long Term Disability Benefits.

148.   In September 17th, 2015 MetLife Sent The Plaintiff A Letter Claiming They NEVER Received Any Request For The List Of All Doctors, Their Contact Information and Their Complete and Unaltered Medical Diagnosis Which They Had Performed Upon The Plaintiff When They Did Their Disability Determination! MetLife Claims They Responded To The Plaintiff On

February 5th, 2014 and They Had Sent "*ALL-RELEVANT-DOCUMENTS*" (**NOT-THE-ENTIRE-FILE**) To The Plaintiff Previously **By FEDEX!**

149.   In October 6th, 2015 The Plaintiff Was AGAIN Placed Into Isolation, But This Time At Home In Wisconsin For Another Positive Tuberculosis Reading From His Blood and Sputum. This Is Now The 10th Time The Plaintiff Had This TB Positive Reading and This Time He Is Isolated For 9-Days In Which The Reading Then Disappears Again. It Was Discovered That The Medical Professionals, MetLife Along With Raytheon Had Discovered In **June 2011** The Possible Reason For These Readings. It Was Discovered and Documented Within The Medical Records To MetLife and Raytheon That This Reoccurring Problem Was Possibly Due To A RARE Mycobacterium Avium Complex (MAC)!

150.   In **December 19th, 2015** The Plaintiff **NOW-DISCOVERS** and **CAN-PROVE,** That MetLife and Raytheon, Did **WILLFULLY** and **INTENTIONALLY** Violate ERISA Law By **FAILING-TO-DEVELOPE** A **COMPLETE** and/or **ACCURATE** Administrative Claims Record For The Plaintiff's Claim By;

   a) **FILING-FRADULENT-ENTRIES** Within The Administrative Claims Record Transaction Record To Deny The Claim!!
   b) **FILING-BLANK-DOCUMENTS** Within The Administrative Claims Record To Allow Them To Deny The Claim!!

c) **FAILING-TO-OBTAIN** The Required Medical Record(s) and/or Answer(s) With Testimony From The Plaintiff's Physician(s) Before, During and After The Appeals Process!!

d) **FAILING-TO-PROVIDE** To The Plaintiff The Identitie(s) and Contact Information Of All Doctors and IMEs Listed In The Administrative Claims Record Before, During and After The Appeals Process!!

e) **FAILING-TO-PROVIDE** To The Plaintiff, In A Timely Fashion and/or Upon Request During The Appeal Process, The ENTIRE Administrative Claims Record With All IME and Other Evaluations!!

f) **FAILING-TO-PROVIDE** To The Plaintiff, In A Timely Fashion and/or Upon Request Before and During The Appeal Process, The Summary Plan Description (SPD)!!

g) **FALSELY-CLAIMING** To The Plaintiff, They Were NOT Required To Answer Questions Before, During and After The Appeal Process!!

h) **FALSELY-CLAIMING** To The Plaintiff, They Had The Authority As To What Medical Evaluation(s), Record(s), Etc. Were To Be Allowed Into The Administrative Claims Record and Which Records Were To Be Used During The Evaluation(s)!!

i) **FALSELY-CLAIMING** To The Plaintiff's Doctor(s), IME(s) and/or Other(s) that The Plaintiff Was A TERMINATED Employee, Was NOT Authorized For Medical Care and/or The Health Problems Were SELF-INFLICTED Which Contradicted The Medical Records and/or Test Results Provided By The Treating Physician(s)!!

j) **FAILING-TO-ALLOW** The Proper Fiduciary, Plan Administrator Or Other(s) To Conduct The Appropriate Review Of The Plaintiff's Claim!!

k) **PROVIDING-FRADULENT** Letters Of Denial To The Plaintiff In Which They Were Found To Be Based Upon A Known Incomplete and/or Fraudulent Administrative Claims Record, Where They Had

Performed-A-Selective-Review Of the Plaintiff's Medical Records, Where The <u>Administrative Record</u> Claims The Plaintiff <u>IS-DISABLED</u> While The Letters Of Denial Claim The Plaintiff Is <u>NOT-DISABLED</u> and Where The Denial <u>Letters-NEVER-Mentioned</u> Any Of These Facts!

151.   In **October 24th, 2017** The Plaintiff Sent A **<u>FINAL-LETTER</u>** To MetLife That Was A <u>Formal and Legal Request</u> To **<u>ATTEMPT-TO-OBTAIN</u>** An Actual and Usable **<u>COMPLETE</u>** and **<u>UNFILTERED</u>** **<u>CLAIMS FILE</u>** Along With All The Evidence MetLife Used In Making Their Adverse-Determination To TERMINATE Benefits and Employment From Raytheon! (<u>This Letter Was Sent With A USPS Tracking Number</u> <u>Which Was 9405 5102 0082 8553 0231 25 Showing That MetLife</u> **<u>RECEIVED</u>** The Letter On **October 26th, 2017** <u>at 2:20 PM.</u>)

152.   In **November 13th, 2017** The Plaintiff Contacted MetLife By E-Mail Due To His NOT Receiving Any Reply To His formal and Legal Letter Of Request They Had Received On **October 26th, 2017** At 2:20 PM. These E-Mail Messages Were Sent To <u>scampany@metlife.com</u>, **Nov 13** At 11:00 AM, Another To <u>bgreen5@metlife.com</u>, **Nov 13** At 11:01 AM, and A Third To <u>mdisabilityc@metlife.com</u>, **Nov 13** At 11:01 AM.

153.   In **November 13th, 2017** at 11:15 AM, The Plaintiff Placed A Call To MetLife Who's Phone Number Is (888)-482-5246 In Which The Person He Spoke To Requested The Claim ID Number Where He Told Her It Was "**671104141207**". At This Point She Then Asked The Plaintiff To Repeat The

Number Where She Next Asked Him To Spell His Last Name and Tell Her His Date of Birth! This Person At MetLife Then Immediately Hung Up On The Plaintiff!

**154.**   In **November 13ᵗʰ, 2017** At 2:30 PM The Plaintiff AGAIN Tried To Call MetLife At Their Phone Number Which Is (888)-482-5246 In Which This Second Person Requested The Claim ID Number Where The Plaintiff Told Him It Was **"671104141207"**. This Person Then Asked The Plaintiff What He Was Calling About Where He Stated He Was Following Up On The Formal Letter Of Request For The Insurance Claims File and Other Requested Information Regarding His Disability Claim. This Operator At MetLife Placed The Plaintiff On Hold To Speak To Someone and When He Returned He Stated That The Formal Letter Of Request Had Been Forwarded To Their LEGAL-DEPARTMENT For A Proper Response. (The Plaintiff Recorded This Entire Phone Conversation and Can Provide It and/or A Legal Transcript Upon Request To The Court As Relevant Evidence To Be Entered Into The Record!)

**155.**   In **November 14ᵗʰ, 2017** at 10:36 AM The Plaintiff Received A Phone Call From MetLife At (315)-797-6000 Regarding His Formal Letter Of Request In Which This Woman Stated They Had Already Responded To His Formal Letter Of Request By Their Own Letter On **November 8ᵗʰ, 2017**! This Woman Then Stated That The Contents Of The Legal Letter They Had Sent, Stated They Were **"REJECTING-HIS-REQUEST"** and They Had In The Past Already

Sent "***ALL-ALLOWED-INFORMATION***" From The Insurance File. The Plaintiff Then Informed MetLife "***They Had NEVER-SUPPLIED All The Information From The File Or Provided The Information He Had Requested In The Past***" Where This Woman AGAIN Stated They Had Sent "***All The ALLOWED-INFORMATION***" For His Case! Under **ERISA § 413 / 29 U.S. Code § 1113,** The Limitation Of Actions For A Breach Of Fiduciary Duty Involving Fraud and/or Concealment Is; **(1)** <u>Six-Years</u> After; **(A)** The Date Of The "<u>Last-Action</u>" Which Constituted A Part Of The Breach Or Violation; Or **(B)** In The Case Of An "<u>Omission</u>", "<u>The Latest-Date On Which The Fiduciary Could Have Cured The Breach Or Violation</u>" Which Occured On This Date Of **November 14th, 2017** and Is Still Occurring To This Day! (<u>The Plaintiff Recorded This Entire Phone Conversation and Can Provide It and/or A Legal Transcript Upon Request To The Court As Relevant Evidence To Be Entered Into The Record!</u>)

---

## PROBLEM(S) WITH LETTER(S):

### List Of <u>MetLife-Letters-To-The-Plaintiff</u> That Were Discovered To Have Problems Within The Administrative Record.

**a)** Letter Dated <u>06-04-2003</u>, **ITS-A-TYPO** on the Letter! Its actual Date is <u>06-04-2011</u> In The Administrative Record but **NOT** Listed in The Transaction Report.

**b)** Letter Dated <u>06-27-2011</u>, In the Administrative Record, but Called <u>06-24-2011</u> on Page 269 of the Transaction Report.

**c)** Letter Dated <u>08-23-2011</u>, **NOT** in the Administrative Record, but Listed on Page 243 of the Transaction Report.

**d)** Letter Dated <u>10-11-2011</u>, **NOT** in the Administrative Record, but Listed on Page 243 of the Transaction Report.

**e)** Letter Dated <u>11-17-2011</u>, In the Administrative Record, but Called <u>11-16-2011</u> on Page 215 of the Transaction Report.

**f)** Letter Dated <u>08-07-2012</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**g)** Letter Dated <u>09-20-2012</u>, **NOT** in the Administrative Record but Listed on Page 60 of the Transaction Report.

**h)** Letter Dated <u>11-26-2012</u>, In the Administrative Record, but Called <u>11-21-2012</u> on Page 40 of the Transaction Report.

**i)** Letter Dated <u>11-29-2012</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**j)** Letter Dated <u>04-17-2013</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**k)** Letter Dated <u>06-07-2013</u>, <u>May **NOT** Be</u> In the Administrative Record, **NOT** Listed in the Transaction Report. (Shown as "**<u>OGC Scan Only</u>**")

**l)** Letter Dated <u>07-11-2013</u>, <u>May **NOT** Be</u> In the Administrative Record, **NOT** Listed in the Transaction Report. (Shown as "**<u>OGC Scan Only</u>**")

**m)** Letter Dated <u>02-05-2014</u>, <u>May **NOT** Be</u> In the Administrative Record, **NOT** Listed in the Transaction Report. (Shown as "**<u>OGC Scan Only</u>**")

**n)** Letter Dated <u>09-17-2015</u>, <u>May **NOT** Be</u> In the Administrative Record, **NOT** Listed in the Transaction Report. (Shown as "**<u>OGC Scan Only</u>**")

**List Of <u>Plaintiff's-Letters-To-MetLife</u> That Were Discovered To Have**

**Problems Within The Administrative Record.**

**A)** 3-Separate Letters Dated <u>05-24-2011</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**B)** 2-Separate Letters Dated <u>01-20-2012</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**C)** 2-Separate Letters Dated <u>05-11-2012</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**D)** 3-Separate Letters Dated <u>08-18-2012</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**E)** Letter Dated <u>01-22-2013</u>, In the Administrative Record, but Called <u>01-29-2013</u> on Page 37 of the Transaction Report.

**F)** Letter Dated <u>04-10-2013</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**G)** Letter Dated <u>06-12-2013</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report. (<u>Is Listed in the MetLife Letter Dated 09-17-2015</u>)

**H)** Letter Dated <u>01-11-2014</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**I)** Letter Dated <u>03-22-2014</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**J)** Letter Dated <u>09-08-2015</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

**K)** Letter Dated <u>10-24-2017</u>, **NOT** in the Administrative Record and **NOT** Listed in the Transaction Report.

## ISSUE(S) AND VIOLATION(S):

What Has Been Discovered and Proven Is MetLife And Raytheon Violated ERISA Law(s) and/or Regulation(s) As Shown By The Evidence Discovered In The Administrative Record, Documents and/or Letters From Various Treating Physicians With Examples Listed Within The "**STATEMENT OF PROVEN FACT(S)**." These Charges For Breach Of Fiduciary Duty By Fraud and/or Concealment While Engaging In Unlawful Acts To Wrongfully Deny A Claim Are As Follows;

**A. Conflict Of Interest Due To This Plan Being One That Is Solely-Funded and Administered By The Employer Raytheon:**

    **1.** Conflict Of Interest In Which This Plan Is Solely-Funded and Administered By The Employer Raytheon and MetLife Only Provides Certain Administrative Claims Services As Shown In MetLife's Own Letter To The Plaintiff Dated **February 5ᵗʰ, 2014**.

**B. Failure To Develop and Provide A Plan Participant's Or Beneficiary's Complete and Factual Insurance Administrative Record:**

    **1.** Failure To Contact A Plan Participant's Or Beneficiary's Attending Physicians Or Others For Medical Records and/or Reports To Properly Develop The Administrative Record.

    **2.** Failure To Enter Available Medical Records and/or Reports Into a Plan Participant's Or Beneficiary's Administrative Record.

    **3.** Failure To Enter Available Medical Records and/or Reports Into a Plan Participant's Or Beneficiary's Administrative Record In A Timely Fashion.

**4.** Entering Multiple False and/or Fraudulent Documents Within A Plan Participant's Or Beneficiary's Administrative Record.

**5.** Entering Multiple False and/or Fraudulent Statements Within A Plan Participant's Or Beneficiary's Administrative Record.

**6.** Withholding Available Medical Records and/or Reports From A Plan Participant's Or Beneficiary's Various Doctors, Independent Medical Examiners Or Others.

**7.** Providing False and/or Fraudulent Statements To A Plan Participant's Or Beneficiary's Attending Doctors, Independent Medical Examiners Or Others.

**8.** Withholding The Administrative Record From A Plan Participant, Beneficiary Or Other Until Well After The Final Appeal Process Had Ended.

**9.** Providing Only Allowed, Pertinent Or Relevant Portions Of The Administrative Record To A Plan Participant, Beneficiary Or Other.

**C. Failure To Automatically Provide A Summary Plan Description In A Timely Fashion and/or Upon Request By A Plan Participant, Beneficiary Or Other:**

**1.** Restricting A Summary Plan Description (SPD) To The Company's Intranet Site and/or Company's Benefits Department Requiring A Plan Participant, Beneficiary Or Other To Obtain Special Access From A Company Official.

**2.** Failure To Automatically Provide To A Plan Participant, Beneficiary Or Other The Summary Plan Description (SPD) Within The "Required 90-Days" After One First Received Benefits.

**3.** Failure To Provide To A Participant, Beneficiary Or Other The Summary Plan Description (SPD) Upon Request As Required By

78

ERISA Law.

**4.** Failure To Provide To A Plan Participant, Beneficiary Or Other The Necessary Information As Required To Be Within A SPD.

**5.** Withholding The Summary Plan Description (SPD) From A Plan Participant, Beneficiary Or Other Until Well After The Final Appeal Process Had Ended.

**6.** Failure To Divulge The Identities Of The Plan Administrator, Fiduciary and Others Upon Request By A Plan Participant, Beneficiary Or Other In Which Legal Process Could Be Served.

**D. Failure To Provide Adequate Notice In Writing To A Plan Participant Or Beneficiary Whose Claim For Benefits Under The Plan Had Been Denied:**

**1.** Failure To Provide To A Plan Participant, Beneficiary Or Other The Specific Reason(s) For The Denial Of The Claim In A Manner Calculated To Be Understood By The Plan Participant, Beneficiary Or Other.

**2.** Providing Substantially Deficient and/or Known Fraudulent Denial Letters To A Plan Participant, Beneficiary Or Other In Which The Administrative Record Had Evidence In The File Raising Doubts As To Its Conclusion And The Plan Administrator and/or Fiduciary Failed To Address Those Doubts In Its Notice.

**3.** Failure To Afford A Reasonable Opportunity To The Plan Participant, Beneficiary Or Other For A Full and Fair Review By The Appropriate Named Plan Administrator and/or Fiduciary.

**4.** Failure To Inform A Plan Participant, Beneficiary Or Other Of Their Notice Requirements and/or Rights Regarding Appeals and Reviews.

**E. Engaging In Frauds and Swindles Involving An ERISA Benefit Plan:**

**1.** Failure To Pay The Plan Participant Or Beneficiary The Correct Level

Of Benefits When It Was Known By The Employer and Insurance Carrier The Claimant Was Bought Into The Plan At **60% Pay Level** and They Were Paying The Benefits At Less Than **50% Pay Level**.

2. Failure To Enter Or Document In The Administrative Record The Existence and/or Receipt Of A Plan Participant's Or Beneficiary's Letters With Medical Records and/or Reports From Doctors and Others.

3. Creating Then Entering Multiple False and/or Fraudulent Mail Bar-Code Records Within A Plan Participant's Or Beneficiary's Administrative Record As Proof That Documents And Records Were Sent When An Investigation Of These Mail Bar-Codes Show The Letters and/or Packages Were Most Likely NEVER Sent.

4. Entering Multiple False and/or Fraudulent Statements Within A Plan Participant's Or Beneficiary's Administrative Record Claiming To Have Had Phone Conversations and/or Reviews With A Plan Participant Or Beneficiary When The Phone Record(s) Clearly Show These Phone Calls Actually NEVER Occurred.

5. Engaging In Deception and/or Fraud By Informing The Plan Participant, Beneficiary Or Other The Refusal Of The Claimant's Request For Information and Documents Was Based Upon ERISA Law NOT Requiring Compliance Or Prohibiting The Request.

6. Engaging In Deception and/or Fraud By Informing The Plan Participant, Beneficiary Or Other They Were NOT Eligible For The Appeal Process and/or Arbitration Of The Claim Based Upon The Claimant "*NO-Longer-Being-An-Employee*"!

7. Engaging In Deception and/or Fraud By Informing The Plan Participant, Beneficiary Or Other They Had NO Legal Right(s) To

Appeal Or File Suite For Benefits As The Only Applicable Statute(s) For This Claim Was That Within The Summary Plan Description and It Had Already Expired.

8. Ending The Plan Participant's Or Beneficiary's Administrative Record On **April 8th, 2013** Showing A Pre-Determined Plan By The Employer, Insurance Carrier and/or Other To Deny The Claim NO-Matter-What The Medical Evidence Showed.

9. Failure To Provide To A Plan Participant, Beneficiary Or Other The Requested and/or Required By Law Missing Administrative Record Names, Contact Information and Evaluations Of All Those Who Did The Initial and Appeals Level Medical Review(s) On The Claimant.

10. Failure To Enter A Medical Director's Evaluation and/or Response Into A Plan Participant's Or Beneficiary's Administrative Record As Stated By The MetLife Administration Transaction Record Dated **June 25th, 2012** Found On <u>Page 115</u>.

11. Failure To Provide Information and/or Documentation To A Plan Participant, Beneficiary Or Other Due To The Claim By The Employer, Insurance Carrier and Other Claiming They Would NOT Honor The Request Since <u>The Claimant Asked The Wrong Question</u> and/or <u>The Wrong Person</u>.

**F. Failure To Act Solely In The Interest Of Plan Participants Or Beneficiaries While Engaging In Prohibited Transactions:**

1. Engaging In Coercive Interference Of Rights To Which A Participant Or Beneficiary Was Legally Entitled Under The Plan.

2. Discriminating Against A Plan Participant Or Beneficiary (<u>American With A Disability</u>) In Order To Deny Rightful Employment and Benefits.

3. Providing False Statements and/or Concealing Material Fact(s) To The Plan Participant, Beneficiary Or Other To Commit Fraud and/or Concealment.

4. Failure To Contact A Plan Participant's Or Beneficiary's Treating Physician(s) To Clarify Or Understand Medical Tests and/or Diagnosis While Providing Fraudulent Conclusionary Statements Within The Administrative Record, To The Claimant and Others Which Was Based Solely On Known and Proven False Assumptions.

5. Failure To Provide A Full and Fair Review Of A Claim In Which MetLife and/or Raytheon Limited The Review Of Medical Records During The Appeal Process To <u>Those After **November 19th, 2012**</u> As Noted In The <u>**March 8th, 2013**</u> MetLife Transaction Report.

6. Engaging In Discrimination Where The Employer and Insurance Carrier Made Conditions So Difficult So As To Create A Constructive Discharge As Shown By Dr. Bacon's **June 21st, 2012** Report.

7. Failing To Provide The Necessary Doctor's Recommended Work Accommodations For A Plan Participant Or Beneficiary.

8. Engaging In Conspiracy Where The Employer and Insurer Conspired Together To <u>Fire The Plan Participant Or Beneficiary</u> In An Act Of Retaliatory Discharge To Deny Rightful Benefits.

9. Employer and Insurer Conspired Together By Contacting The Plan Participant's Or Beneficiary's Attending Doctors To Change Their Medical Diagnosis From <u>Disabled</u> To That Of <u>NOT-Disabled</u>.

10. Employer and Insurer Conspired Together By Contacting The Plan Participant's Or Beneficiary's Attending Doctors To Block Medical Care and Endanger The Health and/or Safety Of The Claimant.

## CONCLUSION(S):

What Has Been Proven Beyond Doubt Is MetLife, Raytheon and Others Deliberately Committed Willful and Intentional Breaches Of Fiduciary Duty While Engaging In Continual Acts Of Fraud, Concealment and Various Other Illegal Acts To Deny Rightful Benefits Due To A Claimant/Plaintiff.

These Criminal Acts, Which Were First Discovered After **September 9th, 2014**, Could Only Have Been **DISCOVERED** After The Claimant/Plaintiff Had Obtained The Summary Plan Description (SPD), Enough Fragments Of The Administrative Record (**Of Which Most Of It Is Still Missing To This Day**) and Various Medical Reports From His Attending Physicians and Others.

As **ERISA § 413 / 29 U.S. Code § 1113** Clearly States, The Limitation Of Actions For A Breach Of Fiduciary Duty Involving Fraud and/or Concealment Is;

**(1)** Six-Years After;

**(A)** The Date Of The "Last-Action" Which Constituted A Part Of The Breach Or Violation; Or

**(B)** In The Case Of An "Omission" The Latest-Date On Which The Fiduciary Could Have Cured The Breach Or Violation; Or

**(2)** Three-Years After;

The Earliest-Date On Which The Plaintiff Had "Actual-Knowledge" Of The Breach Or Violation; Or

**EXCEPT** That In The Case Of "Fraud and/or Concealment", Such Action May Be Commenced **NOT** Later Than "Six-Years" After The "Date-Of-Discovery" Of Such A Breach Or Violation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Defendants May Attempt To Argue The Fault For This Claim Denial Fell Upon The Claimant/Plaintiff, However The Administrative Record PROVES That As FALSE Due To The Claimant/Plaintiff Regularly Furnishing The Medical Records From All His Attending Physicians To MetLife and Others As Soon As They Became Available. This Eliminates Their Claim Of Records NOT Being Available For Review, Even Though Some Attending Physicians Stated In Their Letters To The Claimant/Plaintiff That MetLife, Raytheon Or Others NEVER Attempted To Contact Them For These Records, While MetLife States In Their Own Claims File They-Had-These-Records In Their Possession When Needed!

One Must Also Remember MetLife Claimed They and Raytheon Had The Sole-Authority To Determine What Records Were Allowed, Pertinent and/or Relevant To Be Obtained and Entered Into The Administrative Record, and As Such Be Allowed Access To By The IME's, Claimant/Plaintiff Or Others! This Obvious Case Of Willful and Intentional Fraud and/or Concealment Violated ERISA Law Regarding The Review Process Due To This Plan Being Operated Under A Conflict-Of Interest, Since It Is Self-Funded and Administered By Raytheon With Administrative-Support By MetLife, Who Stood To Gain Undue FINANCIAL-REWARD For Denying The Claim! These Actions By MetLife, Raytheon and Others Resulted In The Administrative Record Being Substantially Deficient and/or Fraudulent and Therefore The Evaluations With Denial-Letters Which Were

Based Upon This Administrative Record Were Determined To Be The Same! For One To Claim The Administrative Record Being <u>Deficient and/or Fraudulent</u> Does <u>NOT</u> Automatically Make The Evaluations and Denial-Letters <u>Deficient and/or Fraudulent</u> Would Be Another Serious-Attempt To Further Violate The Law(s) and/or Procedure(s) Under Which ERISA Claims Are Governed!

What This **<u>ULTIMATELY-PROVES</u>** Is **<u>The Statutes Of Limitations</u>** For This ERISA Claim and/or Case **<u>Has-NOT-Expired-Per-Law</u>** and I Being The Claimant/Plaintiff Now File Suit For My Rightful and Due Benefits With All Appropriate Relief To Make This Claimant/Plaintiff Whole!

---

## APPENDIX:

### <u>ERISA Plan Document(s).</u>

1. Disability At A Glance (2014)
2. Raytheon Company Disability Plan (12-01-2005)
3. Raytheon Company Disability Plan, Raytheon Company Short Term Disability Basic Benefit Plan (12-15-2006)
4. Raytheon Company Short Term Disability Basic Benefit Plan, Raytheon Company Disability Plan (03-10-2007)
5. Raytheon Company Short Term Disability Basic Benefit Plan, Raytheon Company Disability Plan (12-28-2009)
6. MetLife Administrative Record Transaction Report (Totaling 314-Pages)

**7.** MetLife Administrative Record As Supplied To Claimant (For 2011 to 2014)

## Relevant Evidence.

**1.** Dr. Bacon Medical Record About Bacteria And Fungal Found (11-28-2006)

**2.** Dr. Bacon Medical Record About Forced Toxin Exposure (01-23-2007)

**3.** Dr. Bacon Medical Record About Staples Coming Out (12-30-2008)

**4.** Dr. Bacon Medical Record About Muscle Wall Open (12-14-2010)

**5.** Raytheon Lost Classified Computer Hard-Drives (2010)

**6.** Raytheon Refuses To Respond To Thrush-Law (10-11-2010)

**7.** AMRAAM Award (02-10-2011)

**8.** Dr. Bacon Medical Record About Sean's Letter (02-14-2011)

**9.** Dr. Bacon Medical Record About Complaints By Raytheon (03-14-2011)

**10.** Dr. Bacon Medical Record About System Wide Infection (04-12-2011)

**11.** Dr. Bacon Medical Record About Sutures Coming Out (06-13-2011)

**12.** Bacon Not Doctor Anymore (11-30-2012)

**13.** AT&T Phone Transaction Report (03-19-2013 to 04-18-2013)

**14.** Dr. Gray-Letter (11-13-2013)

**15.** Dr. Lilani ENDRO-Letter (11-08-2013)

**16.** Phoenix Cardiology-Letter (12-09-2013)

**17.** MetLife Records Request Tracking Record (10-25-2017)

**18.** From-MetLife-Insurance-Claim (11-29-2012)

**19.** From Raytheon-Term-Employment (12-04-2012)

**20.** From MetLife Original Refusal (11-03-2017)

**21.** Paul-To-MetLife-Request-For-Fiduciaries (03-05-2019)

**22.** Paul To Raytheon Request For Fiduciaries (03-05-2019)

1   **23.** Raytheon Response To Plan Administrator Names (04-03-2019)

2   **24.** USPS Mail Tracking Report For Date (02-01-2013)

3   **25.** USPS Mail Tracking Report For Date (04-08-2013)

4   **26.** E-Mail From Veronica Thomas Ill-Meeting (02-10-2011)

5   **27.** E-Mail By Veronica About Paul's Office Being Gone (12-05-2011)

6   **28.** E-Mail Rejection By Mary Richardson (01-31-2013)

7   **29.** E-Mail Raytheon Security About Clearance (March and April 2013)

8   **30.** E-Mail Request For Plan-Or-Policy (09-25-2013)

9   **31.** E-Mail Response And Plan Received (09-30-2013)

10  **32.** E-Mail Request For Complete Admin-Record (11-13-2017)

11  **33.** E-Mail Request to Met-Life for Administrative Record (11-13-2017)

12  **34.** E-Mail Request to Beth Green for Administrative Record (11-13-2017)

13  **35.** E-Mail Request to Susan Campany for Administrative Record (11-13-
14      2017)

15  **36.** Dr. Schaller -Aetan-Business-Profile

16  **37.** Dr. Schaller Arizona-Medical-Board-License

17  **38.** Dr. Schaller Company-Purchased-By-Aetna

18  **39.** Dr. Schaller Consulting-Business-Addresses

19  **40.** Dr. Schaller Consulting-Company-Profile

20  **41.** Dr. Schaller Email To Washington-Medical-Board

21  **42.** Dr. Schaller Washington-Board-License 5-Digit-Search

22  **43.** Dr. Schaller Washington-Board-License 8-Digit-Search

23  **44.** Dr. Schaller Washington-Medical-Board Code-RCW 18.71.021

24  **45.** Dr. Schaller Washington-Medical-Board Code-RCW 18.71.030

25

26

27  ---

28

## PRAYER FOR RELIEF:

I Being The Plaintiff Now Pray For Judgement Against The Defendant(s) and That

This Court Issue FULL and FAIR Equitable Relief As Follows:

1. Issue **Compensatory-Damages** As This Court Deems Appropriate and Just For Relief Of Incurred Loss Due To The Defendants Violations Of ERISA Law(s).

2. Issue **Declaratory-Relief** As This Court Deems Appropriate and Just To Make The Claimant/Plaintiff Whole Under ERISA Law(s).

3. Issue **Equitable-Relief** As This Court Deems Appropriate and Just To Ensure Compliance To ERISA Law(s) and The Terms Of The Plan/Policy.

4. Issue **Injunctive-Relief** Commanding Defendant(s) To Immediately Restore ALL The Claimant's/Plaintiff's Disability Benefits Which Are Rightfully Due Under The Claim# 671104141207, Group# 301791.

5. Issue **Punitive-Damages** Against The Defendants In A Fair and Just Amount For Their Violations Against ERISA Law(s) and The Claimant/Plaintiff.

6. Issue **Other-Appropriate-Relief** As The Court Deems Just In Order To Ensure The Defendants Do NOT Obtain Undue and Unjust Enrichment At The Expense Of A Wrongfully Injured Claimant/Plaintiff.

7. Award **Costs and/or Fees** To The Claimant/Plaintiff For His Documented Litigation Under ERISA § 502(g) / 29 U.S.C § 1132(g).

Respectfully Submitted

Paul E. Jozwiak
404 South Cedar Ave.,
Marshfield, WI 54449
Phone: (520)-818-4976

## STATEMENT OF VERIFICATION:

I Have Read The Above Complaint and It Is Correct To The Best Of My Knowledge.

Date: _January 15, 2020_

Signature: _Paul Jozial_